**Roy L. STINNETT, Plaintiff-Appellee,**

v.

**DAMSON OIL CORPORATION, Defendant-Appellant.**

No. 85–6552.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1987.

Decided April 2, 1987.

---

Michael J. Ezer, Orville O. Orr, Jr. and Anthony Russo, Los Angeles, Cal., for plaintiff-appellee.

Stuart L. Kadison, Los Angeles, Cal., for defendant-appellant.

Before BROWNING, TANG and REINHARDT, Circuit Judges.

TANG, Circuit Judge:

This is the fourth time this case has come up on appeal. Damson Oil Corporation appeals the judgment of the district court awarding damages in the sum of $1,868,220.60 in favor of Roy L. Stinnett for breach of contract and prejudgment interest.

## FACTS AND PROCEDURAL HISTORY

On July 21, 1975, Stinnett, doing business as Stinnett Oil Company, acquired certain oil and gas leases at the Venice Beach Oil Field from Mobil Oil Corporation. In December 1975, Stinnett sold the leases to Damson Oil corporation.

Under the terms of the Stinnett-Damson contract, Stinnett Oil Company (hereafter "Subsidiary") was incorporated. Stinnett held 99 shares of Subsidiary stock and Damson held one share. At the closing of the deal between Stinnett and Damson, Stinnett transferred all of his shares of Subsidiary to Damson. In return, Damson agreed to: (1) deliver to Stinnett 12,500 shares of Damson common stock; (2) reim-

burse him for expenses; and (3) cause Subsidiary to convey a five percent overriding royalty interest in all oil and gas produced on the leases in excess of 500 barrels per day, with an option to convert the five percent interest to a fifteen percent working interest in the property covered by the leases. A royalty is essentially a percentage of production and a working interest is a percentage of profit after payout, the break-even point. Subsidiary agreed to execute an assignment of royalty.

Stinnett's contract with Mobil provided that Stinnett or his successor could rescind the contract in the event that certain price regulations, to be established by the Federal Energy Administration (FEA), made development of the oil field unprofitable. Stinnett's contract with Damson similarly provided that if Damson rescinded the agreement with Mobil, Damson's agreement with Stinnett would also be rescinded. Finally, the Stinnett-Damson contract expressly left decisions concerning drilling and operation of the Venice Beach Field to the sole discretion of Damson.

The FEA did promulgate adverse regulations. Damson notified Mobil of its intent to rescind the contract. After negotiation, Damson and Mobil instead agreed to reduce significantly the price of the leases. Damson then notified Stinnett that it had reached a new agreement with Mobil and was rescinding its contract with Stinnett. Stinnett then sued Damson for breach of contract, praying for specific performance.

In *Stinnett v. Damson Oil Corporation*, 648 F.2d 576 (9th Cir.1981) (*Stinnett I*), Stinnett appealed a judgment of the district court holding that Damson did not breach the contract and awarding Stinnett $10,404.96 as reasonable compensation for his efforts in arranging sale of the lease from Mobil to Subsidiary. This court reversed, holding that Damson had breached the contract and remanded to the district court for further proceedings. *Id.* at 583.

In *Stinnett II*, No. 81–5947, slip op. (January 17, 1983) [701 F.2d 186 (9th Cir. table)] (memorandum disposition), Stinnett sought reversal of the district court's decision that he was not entitled to specific performance of Damson's agreement to convey Damson's stock and Subsidiary's royalty interest. Stinnett had not joined Subsidiary as a party because to do so would destroy diversity jurisdiction. This court affirmed the denial of specific performance with respect to the stock and royalty agreements, and remanded to the district court for an evidentiary hearing on the issue of damages for failure to convey the royalties.

In *Stinnett III*, No. 83–6046, slip op. (July 25, 1984) [742 F.2d 1463 (9th Cir. table)] (memorandum disposition), Stinnett appealed the district court's judgment that he was entitled to no damages for Damson Oil Corporation's failure to convey the fifteen percent working interest in the oil and gas leases. The district court had based its decision on a finding that "payout" had not been reached and "[i]t is uncertain and speculative whether Payout as defined in the Basic Agreement, will ever occur." This court reversed, holding that the judge erred in refusing to admit into evidence certain Reserve Reports which had been prepared by Damson that showed the estimated reserve value of the oil wells. The cause was remanded for further proceedings.

This court is now presented with *Stinnett IV*. The district court held that Stinnett was entitled to damages based on fifteen percent of the projected profit of the oil well less the amount of money needed to reach "payout." The projections were based on Damson's Reserve Reports estimating the value of the oil field and the court's determination that Damson had undertaken a drilling program which would realize the estimated value of the field. The court also awarded Stinnett prejudgment interest of $373,746.49 for the two year two day period beginning with the closing date of the first damages trial, plus $511.84 per day interest from the end of the second damages trial until the date judgment was entered.

## DISCUSSION

Damson argues that the district court erred in determining that the law of the

case established beyond relitigation the fact that Stinnett had sustained damages of some amount; that the district court's award of damages is clearly erroneous because the contract imposed no obligation on Damson to develop the oil field, it was based upon price projections for oil rather than the actual price at the time of trial, and on projections that did not allow for risks of drilling; and that the district court erred in awarding prejudgment interest. Damson also requests this court to take judicial notice of the sharp decline in world oil prices and recalculate the damage award or remand to the trial court for the purpose of recalculating damages.

### 1. *Fact of Damage*

Damson argues that the district court misread the mandate of *Stinnett III* in concluding that the fact of damage had been proved. Stinnett counters that *Stinnett II* established the fact of damage.

Neither *Stinnett II* nor *Stinnett III* established the fact of damage. *Stinnett I* established the fact of breach and the trial court held that such was the law of the case. *Stinnett II* barred specific performance but held that Stinnett had pleaded facts sufficient to support an action for damages. *Stinnett II* remanded for a trial on damages. *Stinnett III* did not establish the fact of damages either. It reversed and remanded because the trial court failed to consider the Reserve Reports which "may or may not" overcome the trial court's finding that the fact of damages was speculative. The court clarified the certainty requirement:

> California law only requires that a party show with reasonable certainty that he has suffered damages. *E.g., Stott v. Johnson* [Johnston], 36 Cal.2d 864, 875, 229 P.2d 348, 355 (1951). Once the fact of damages has been demonstrated, however, recovery will not be denied because the precise amount of damages cannot be determined. *Id.*

*Stinnett III,* at 5.

Thus, *Stinnett III* mandated first, a finding that Stinnett had in fact, been damaged (which Stinnett must prove with reasonable certainty); and second, if Stinnett has been damaged, a determination of the amount of damage (which need not be proved with certainty).

The district court followed the mandate of *Stinnett III.* It first determined the fact of damage:

> The requisite reasonable certainty that plaintiff has suffered damage—the "fact" as opposed to the amount of damage—was established not only by defendant's consistent and adamant refusal to convey to plaintiff the 15% Working Interest, but also by defendant's own "Reserve Reports" on the five wells ... which show "Proved Oil and Gas Reserves"....

*Stinnett v. Damson Oil Corp.,* D.C. No. 77–3933R, Final Findings of Fact and Conclusions of Law (C.D.Cal. Dec. 4, 1985).

■ We review for clear error the district court's finding that Stinnett had in fact been damaged by Damson's breach. *Woods v. United States,* 724 F.2d 1444, 1451 (9th Cir.1984).

■ Damson argues that the trial court erred in disregarding the contract provision giving Damson complete control over all drilling decisions including the right not to drill at all. It argues Stinnett cannot be damaged because Damson has no obligation to drill. If anything argues Damson, the damage must be nominal. We disagree. At the time of contracting, the parties obviously expected that Damson would develop the oil field because otherwise, neither party would profit from the transaction. Furthermore, the court determined that Damson's own reserve reports and conduct demonstrated, with reasonable certainty, that Damson intended to commence development. As we stated in *Stinnett II,* under California law, "where the lessee of an oil and gas lease failed to drill and develop an oil well the lessor could recover the royalties he would have received had the lessee performed." *Stinnett II,* at 5 (citing *Fisher v. Hampton,* 44 Cal.App.3d 741, 747, 118 Cal.Rptr. 811, 814 (1975)). We hold that the trial court did not err in holding that Stinnett has been damaged by Damson's breach.

### 2. *Amount of Damages*

■ The Court of Appeals will not disturb an award of damages unless it is clearly unsupported by the evidence. *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760 (9th Cir.1985). An otherwise supportable damage verdict will be affirmed unless it is grossly excessive, monstrous, or shocking to the conscience. *Id.*

■ Damson argues that the trial court erred in using a price projection rather than the actual price of oil at the time of trial in estimating the oil field's profitability. It argues that the trial court also erred in projecting that drilling would commence in fiscal 1985 and 1986 where, Damson contends, the evidence shows the drilling would commence no earlier than fiscal 1987 and 1988. Finally, Damson argues that the district court erred in failing to discount for risk. The data used to calculate the award came primarily from Damson's own Reserve Reports. In *Stinnett III*, we reversed because the court had failed to consider these reports. Upon remand, the judge found them relevant and relied upon them. The judgment is clearly supported by the evidence.

### 3. *Prejudgment Interest*

■ This court reviews a district court's interpretation of state law de novo. *Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

■ The district court awarded prejudgment interest under either Cal.Civ.Code § 3288 or § 3287(b). Section 3288 provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." Because this is a contract action, Stinnett must prove oppression, fraud or malice. *See Bullis v. Security Pacific Nat. Bank*, 21 Cal.3d 801, 814, 148 Cal. Rptr. 22, 29, 582 P.2d 109, 116 (1978). We hold that prejudgment interest is not available under section 3288 in this case because the trial court did not find oppression, fraud, or malice.

Cal.Civ.Code § 3287(b) provides:

Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Prejudgment interest under this section is designed solely to compensate the injured party. *In re Pago Pago Aircrash of January 30, 1974*, 525 F.Supp. 1007, 1013 (C.D.Cal.1981). A court awards prejudgment interest "so that the award will reflect the present value of the plaintiff's claim." *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1106 (9th Cir.1985). In this case the damage award reflected the present value of Stinnett's claim. Therefore, the imposition of prejudgment interest for the two year two day period commencing on the closing date of the first damages trial through the end of the second damages trial constitutes double recovery. *See In re Pago Pago Aircrash*, 525 F.Supp. at 1016. Such an award must be characterized as punitive or exemplary rather than compensatory. Under California law, a court may not award exemplary damages in an action based on breach of contract. Cal.Civ.Code § 3294; *Contractor's Safety Ass'n v. California Compensation Ins. Co.*, 48 Cal.2d 71, 77, 307 P.2d 626, 629 (1957). We hold that the trial court abused its discretion in awarding Stinnett prejudgment interest for the period before April 1, 1985, the date upon which the court fixed present value.

The court also awarded $511.84 per diem interest commencing June 11, 1985, the date the second damages trial ended, through the date judgment was entered. Because the damage award was based upon present value of anticipated production as of April 1, 1985, an award of prejudgment interest for the period commencing April 2, 1985 through the date judgment was entered would not constitute double recovery. An award of daily prejudgment interest for that period would not constitute an abuse of the court's discretion.

Accordingly, we reverse the award of prejudgment interest and remand to the district court so that it may enter judgment awarding prejudgment interest in the

amount of $511.84 per diem commencing April 2, 1985 through the date judgment was entered.

### 4. *Decline of World Oil Prices*

Damson urges this court to take judicial notice of declining world oil prices and re-calculate the award or remand to the trial court to recalculate. The price of oil used in calculating the damages was $22.76 a barrel. Venice Beach Oil was selling for $22.45 a barrel at the time of the trial. After the trial, the price of Venice Beach Oil fell dramatically.

We decline to take judicial notice of world oil prices. Oil prices are inherently volatile. Although Venice Beach oil may now be selling for less than the price used in projecting the profitability of the oil field over the long term, it is very possible that oil prices will soon greatly exceed the price used in the projections. The current price is not a valid reason for upsetting a judgment based on reasonable price projections.

### CONCLUSION

The judgment of the district court awarding damages against Damson in the sum of $1,868,220.60 for breach of contract is affirmed. The award of prejudgment interest is reversed and remanded for entry of judgment consistent with this opinion.