**UNITED STATES of America,**
**Plaintiff,**

v.

**Michael Torres JAIMES (3), Defendant.**

**No. 02–00175–03–ACK.**

United States District Court,
D. Hawai'i.

July 16, 2003.

---

Earle A. Partington, Law Office of Earle A. Partington, Honolulu, HI, Pamela O'Leary Tower, Honolulu, HI, for Michael Torres Jaimes (3) aka "Mikey", defendant.

## ORDER DENYING DEFENDANT'S MOTION TO TAKE JUDICIAL NOTICE

KAY, District Judge.

### BACKGROUND

Near the close of trial, Defendant Michael Torres Jaimes orally moved for an Order taking judicial notice that a substantial amount of United States currency is contaminated by cocaine. Defendant filed a Memorandum in Support on June 26, 2003. The United States filed an Objection to Defendant's Request to Take Judicial Notice on June 26, 2003. On June 30, 2003, the Court orally denied Defendant's Motion and stated that it would file a written order.

### DISCUSSION

#### I. Judicial Notice

Judicial notice of adjudicative facts is appropriate only when the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R.Evid. 201(a), 201(b). A court is required to take judicial notice of such a fact "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d).

Defendant Michael Torres Jaimes argues that the Court is required to take judicial notice of the fact that a substantial amount of United States currency in circulation is contaminated by cocaine. Jaimes relies entirely a report entitled "Cocaine Contamination of Currency" (the "Report") (Exhibit "B" to the Memorandum in Support of Defendant Jaimes' Request to Take Judicial Notice) for support.

█ Judicial notice of adjudicative facts must be approached cautiously because it dispenses "with traditional methods of proof" and removes the fact noticed from the province of the jury. *See* Fed.R.Evid. 201, *advisory committee notes to subdivision (b).* Accordingly, judicial notice is appropriate only when the matter is established "beyond reasonable controversy." *Id.* That cannot be said of the relative contamination of United States currency. *See* Exs. "A"-"C" to United States' Objection to Defendant's Request for Judicial Notice.

Indeed, the only court to examine this issue, the Third Circuit in *United States v. Carr,* 25 F.3d 1194 (3d Cir.1994), flatly declined to take judicial notice of the fact that "nearly all currency contains detectable traces of illegal narcotics ...."[1] *Id.* at 1202 n. 3. Jaimes seeks to distinguish *Carr* on the ground that the defendants there sought judicial notice of the fact that "nearly all" currency (or between "seventy and ninety percent" of currency) is con-

taminated, while Jaimes asks only for judicial notice of the fact that "a substantial amount" of currency is so contaminated. This is a distinction without a difference. The Third Circuit refused to take judicial notice because the contamination of currency by narcotics is not a fact beyond "reasonable dispute." *See id.* The same is true here.

Finally, the Report does not even purport to show that a "substantial amount" of currency is contaminated by cocaine. The Report found that a certain level of contamination was present in Chicago, Houston and Miami. This conclusion cannot be used to establish beyond all reasonable controversy that similar levels of contamination are present in all currency circulating throughout the country.

For the foregoing reasons, the Court DENIES Jaimes' request to take judicial notice. *Cf. Stinnett v. Damson Oil Corp.,* 813 F.2d 1394, 1399 (9th Cir.1987).[2]

---

1. Jaimes' counsel presented the Court with several published cases discussing the relative contamination of currency. The most important of these, *United States v. U.S. Currency, $30,060.00,* 39 F.3d 1039 (9th Cir.1994), addressed the weight of a drug dog alert to money; specifically, whether such an alert, standing alone, is sufficient to establish probable cause. *Id.* at 1042. In contrast to the evidence presented here, the *$30,060.00* court had before it apparently unchallenged evidence that in excess of seventy-five percent of the currency circulating in Los Angeles—the relevant area—was contaminated. *Id.* at 1043. Given that, and the court's own conclusion that "it is extremely likely a narcotics dog will positively alert when presented with a large sum of currency from that area," the court found probable cause for the search lacking. *Id.* at 1043–44. This cannot be considered an instance of a court taking judicial notice of either the level of contamination or the likelihood of a false alert. The issue of judicial notice was simply not before the court in *$30,060.00.* Indeed, the court did not assume a given amount of contamination of

currency in Los Angeles to be true as a factual matter; the court instead relied on uncontroverted evidence of that fact as found in the record. As to the observation of a drug dog's propensity to falsely alert because of generally contaminated currency, this is an assumption, not judicial notice, and the assumption was recently undercut in *United States v. $22,474.00,* 246 F.3d 1212, 1216 (9th Cir. 2001), and *United States v. $141,770,00,* 157 F.3d 600, 606 (8th Cir.1998).

2. Jaimes' Memorandum in Support conflates the hearsay exception for public records with judicial notice. Jaimes argues that because the Report is a public record under Rule 803(8)(C), the Court must take judicial notice of the facts and conclusions stated therein. This is plainly not so. As the following discussion reveals, the Report is entitled to the Rule 803(8)(C) hearsay exception, but that alone does not establish the admissibility of the document, let alone require the Court to take judicial notice of the Report's factual findings and analytical conclusions.

## II. *Admissibility of Exhibit "B"*

The next and more difficult issue is whether the Report is even admissible in this case. Jaimes argues that the Report is a public record and, as such, is admissible for the truth of the matter stated therein. *See* Fed.R.Evid. 803(8)(C). The Government counters that Exhibit "B" contains inadmissible hearsay and is irrelevant.

■ Rule 803(8) creates hearsay exceptions for "[r]ecords, reports, statement, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."[3] Fed.R.Evid. 803(8)(C). This includes factually-based conclusions or opinions. *E.g., Johnson v. City of Pleasanton*, 982 F.2d 350, 353 (9th Cir.1992).

The Report purports to be a public study compiled by researchers with the Argonne National Laboratory, the U.S. Coast Guard Research and Development Center and the Houston Advanced Research Center.[4] The Report is primarily a data compilation and includes the researchers' conclusions as the meaning of the facts found. The Government does not argue that the sources for the Report or the circumstances surrounding its creation indicate a lack of trustworthiness, or that

the U.S. Coast Guard and the Department of Energy are not public agencies. The Government had the burden to rebut the appropriateness of excepting the Report from the hearsay rule and, having failed that, the Court finds Rule 803(8)(C) applies.[5] *Cf. Johnson*, 982 F.2d at 353; *Washington Cent. R.R. Co., Inc. v. National Mediation Bd.*, 830 F.Supp. 1343, 1354 (E.D.Wash.1993).

This does not end the inquiry, however, because items excepted from the hearsay rule are subject to other evidentiary requirements and exclusions. Fed.R.Evid. 803, *advisory committee notes*. The most basic requirement is that the evidence be relevant, Fed.R.Evid. 402, that is, "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed.R.Evid. 401. "Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it into evidence." Fed. R.Evid. 401, *advisory committee notes*.

■ The only fact of consequence here, that is, the matter sought to be proved, is whether general contamination of currency by cocaine would cause a properly trained drug dog to alert to currency that had not

---

**3.** This portion of Rule 803(8) applies in criminal cases only when used against the Government.

**4.** The Abstract states, "[T]he U.S. Coast Guard, in conjunction with U.S. customs, HARC and Argone National Labs[,] began a study to determine how readily cocaine particles and residue are transferred from one object to another object, and how long residue remains on a person. Simultaneously, a study was conducted to indicate the general prevalence and level of cocaine contamination in U.S. paper currency."

**5.** With respect to authentication, Rule 902 makes certified copies of "an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form" self-authenticating. Fed.R.Evid. 902(4). Defense counsel represent that they have a certified copy of the Report. The Court will assume this to be true for purposes of the present discussion.

recently been exposed to cocaine by the person in possession of the currency. The Report has no bearing on this issue. The Report shows, at best, that seventy to eighty percent of the currency circulating in Chicago, Houston and Miami contains trace to high levels of cocaine contamination when tested using a gas chromatograph/mass spectrometer. This sheds very little light on the contamination of currency in San Diego.[6] Indeed, the report notes that the level of contamination (trace to high) varied greatly among the three cities tested. Presumably similar variances would be found between the cities tested and other cities in the United States. Thus, even with the Report, San Diego's percentage and level of contamination are left entirely to assumption.

More importantly, the report contains no information showing that properly trained drug dogs alerted on the seventy to eighty percent of currency found to be contaminated in Chicago, Houston and Miami. *Cf. $141,770.00*, 157 F.3d at 606. In fact, there is anecdotal evidence that properly trained drug dogs will not give false alerts, that is, will not alert to contaminated currency unless it has recently been exposed to drugs.[7] *See id.* at 605–06; *$22,474.00*, 246 F.3d at 1216. It is of little consequence to prove that a "substantial amount of currency is contaminated by cocaine," if drug dogs in general (and, in particular, the drug dog that alerted to the money at issue in this case) will not misleadingly alert to such currency. *Cf. $141,770.00*, 157 F.3d at 606.

Standing alone, the Report cannot be said to make these matters—the facts sought to be proved—more probable or less probable. The jury would thus be left to speculate without foundation as to the purpose and meaning of the Report, raising Rule 403 issues that the jury would be mislead or confused as well.

For the foregoing reasons, the Court RULES that the Report is inadmissible.

### CONCLUSION

The Court DENIES Defendant Jaimes' Motion to Take Judicial Notice. The Court concludes that the relative contamination of United States currency is subject to reasonable dispute because the amount of contamination is neither (1) generally known within the territorial jurisdiction of the trial court, nor (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Judicial notice of such an uncertain fact is inappropriate.

The Court also excludes the Report as irrelevant and confusing. The Court finds that the Report is irrelevant under Fed. R.Evid. 402, as it does not make a fact of consequence to the determination of this action more probable or less probable than it would otherwise be. This is because the Report, even if accurate, does not study currency in San Diego—or even the West Coast of the United States—where the seizure of currency in this case occurred. Furthermore, the Report has no bearing on the fact sought to be proved, that is, whether general contamination of currency could cause a properly trained drug dog to

---

**6.** The currency at issue was seized on April 24, 2002, at 387 Pine Avenue, San Diego, California.

**7.** Defendant did not challenge the training of the drug dog involved in this case. Moreover, there was uncontroverted testimony that the dog did not alert every time he was presented

with currency. That is, when presented with currency seized from other locations, the dog did not react in such a way as would indicate contamination by a controlled substance. The dog alerted, however, when presented with the currency seized at Pine Avenue.

alert to currency that had not been recently exposed to cocaine by the person in possession of the currency. For those reasons, the Report is irrelevant and also raises 403 concerns of misleading and confusing the jury.

IT IS SO ORDERED.