William R. RUIZ, Kevin J. Nally and John Greco, Jr., on Behalf of themselves and all others similarly situated, Plaintiffs,

v.

The COMMISSIONER OF the DEPARTMENT OF TRANSPORTATION OF the CITY OF NEW YORK and the New York State Department of Motor Vehicles, Traffic Violations Bureau, Defendants.

No. 85 Civ. 3263(RJW).

United States District Court,
S.D. New York.

Jan. 21, 1988.

Altieri, Kushner, Miuccio & Frind, New York City, for plaintiffs; Alexander A. Miuccio, Debra Ruth Wolin, of counsel.

Peter L. Zimroth, Corporation Counsel of the City of New York, New York City, for defendant Commissioner; Anne P. Ward, Gabriel Taussig, Gary Tarnoff, George Gutwirth, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant Dept. of Motor Vehicles; August L. Fietkau, Ann Horowitz, of counsel.

**ROBERT J. WARD, District Judge.**

Plaintiffs, who are truck drivers, brought this action to challenge the enforcement against them of New York City (the "City") regulations setting weight limits on trucks using streets and highways within the City. By order to show cause, plaintiffs sought to obtain a temporary restraining order pursuant to Rule 65(b), Fed.R. Civ.P., prohibiting enforcement of the challenged regulations, a preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P., and summary judgment pursuant to Rule 56, Fed.R.Civ.P. In addition, plaintiffs sought the joinder of two additional parties as plaintiffs pursuant to Rule 19, Fed.R. Civ.P., and class action certification pursuant to Rule 23, Fed.R.Civ.P. Defendants have cross-moved to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. Defendant New York State Department of Motor Vehicles, Traffic Violations Bureau ("State Defendant") also seeks costs, disbursements, attorney's fees and sanctions against plaintiffs pursuant to Rule 11, Fed. R.Civ.P. For the reasons that follow, plaintiffs' motions are denied in their entirety. Defendants' motions are granted insofar as they seek dismissal of this action and denied insofar as they seek costs, disbursements, attorney's fees and sanctions.

## BACKGROUND

This action involves the interplay of local regulations with state and federal statutes. Plaintiffs do not challenge the regulations as currently written, but as they existed when plaintiffs were charged with violations. This action, then, is of intense personal interest to the parties, though it may be mainly of historical interest to others. Plaintiffs' challenges do not apply to the amended regulations as they appear on the books today.

The federal statute at issue in this case, 23 U.S.C. § 127, was enacted as part of the Federal Surface Transportation Assistance Act of 1982 ("STAA"). Pub.L. No. 97–424, 96 Stat. 2097 (codified as amended in scattered sections of Titles 15, 16, 23, 26, 33, 42, 46, 49 U.S.C.). The STAA, with an effective date of January 6, 1983, reflects generally " 'a congressional interest in establishing uniform regulations governing the size, weight, and arrangements of trucks used in interstate commerce.' " *New York State Motor Truck Ass'n, Inc. v. City of New York*, 654 F.Supp. 1521, 1524 (S.D.N.Y.1987) (*quoting United States v. Connecticut*, 566 F.Supp. 571, 576 (D.Conn.1983), *affirmed mem.*, 742 F.2d 1443 (2d Cir.1983), *affirmed mem.*, 465 U.S. 1014, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984)), *affirmed*, 833 F.2d 430 (2d Cir. 1987). Section 127 of Title 23, in particular, sets forth a formula for determining the maximum permissible weight for vehicles using federal highways, depending on the vehicles' size and the number and arrangement of axles, with an overall maximum weight permitted of 80,000 pounds.

The statute provides for the withholding of federal highway funds from any state which does not permit vehicles weighing up to 80,000 pounds to use its federal highways.[1]

Concerned with the potential loss of millions of dollars in federal highway funds, the New York State Legislature during its next session amended its own laws in an effort to ensure compliance with the requirements of the STAA. This statute, which became effective on September 30, 1983, prohibits both the state and its political subdivisions from "enact[ing] [ ]or enforc[ing] any law, statute, ordinance, rule or regulation with respect to vehicle dimensions or weights which shall violate any of the provisions of the [STAA]." N.Y. Veh. & Traf. Law § 385(20) (McKinney 1986). Furthermore, "[a]ny such law, statute, ordinance, rule or regulation which results in a notification of an imminent loss or withholding of federal highway aid to the state shall to the degree inconsistent hereafter be deemed null and void and shall not be enforced." *Id.*

During this period, New York City's traffic regulations prohibited the operation on its streets and highways of any vehicle exceeding 73,280 pounds. New York, N.Y., Traffic Regulations art. 19, § 211(10) (amended 1985).[2] Regulation enforcement officers, employed by the New York City Commissioner of Transportation for the purpose of enforcing the City's traffic regulations, stopped plaintiffs while they were driving their cement trucks within the City limits, either on federal highways or on access ramps leading to or from federal highways. Each plaintiff was directed to proceed to a station where his truck was weighed, and he was issued a summons for violating the weight limitation of former section 211(10).

Although the 73,280 pound limitation of former section 211(10) appears on its face to be at odds with the 80,000 pound limit found in the STAA, the City maintained an informal policy whereby it enforced the 73,280 pound limit only on local roads and issued summons for overweight trucks on federal highways only where they exceeded the federal limit of 80,000 pounds. Plaintiffs' Exhibit J, filed October 15, 1987. Each plaintiff, in fact, is charged with driving a vehicle that weighed in excess of 80,000 pounds. Plaintiffs do not assert that former section 211(10) was ever enforced against anyone operating on federal highways a truck weighing in excess of 73,280 pounds but less than 80,000 pounds.

Nevertheless, plaintiffs argue that former section 211(10) is invalid and cannot be enforced against them. They present several grounds for this contention. First, plaintiffs argue that former section 211(10) is void for vagueness, because it failed to give fair notice of what conduct was prohibited. Second, the plaintiffs assert that the informal enforcement practice of the Commissioner amounted to an unauthorized amendment of the regulation violating plaintiffs' right to due process. Third, plaintiffs argue that the regulation enforcement officers who stopped plaintiffs' trucks and issued their summonses were

---

1. 23 U.S.C. § 127(a) provides in part:

   *No funds* authorized to be appropriated for any fiscal year under provisions of the Federal–Aid Highway Act of 1956 *shall be apportioned to any State which does not permit* the use of the National System of Interstate and Defense Highways within its boundaries by vehicles with a weight of twenty thousand pounds carried on any one axle, including enforcement tolerances, or with a tandem axle weight of thirty-four thousand pounds, including enforcement tolerances, or *a gross weight of at least eighty thousand pounds* for vehicle combinations of five axles of more. However, the maximum gross weight to be allowed ... may not exceed eighty thousand pounds.

(emphasis added).

2. New York, N.Y., Traffic Regulations art. 19, § 211(10) (amended 1985) provided:

   A single vehicle or a combination of vehicles having three axles or more and equipped with pneumatic tires, when loaded, may have a total weight on all axles not to exceed thirty-four thousand pounds, plus one thousand pounds for each foot and major fraction of a foot of the distance from the center of the foremost axle to the center of the rearmost axle.... *In no case, however, shall the total weight exceed seventy-three thousand two hundred and eighty pounds* without any tolerance for enforcement purposes.

(emphasis added).

not authorized to enforce former section 211(10), rendering the stops unreasonable seizures in violation of the Fourth Amendment. Finally, plaintiffs argue that former section 211(10) imposes an undue burden on interstate commerce in violation of the Commerce Clause.[3]

The named plaintiffs in this action are not alone in their challenge to former section 211(10). On February 4, 1985, Jack A. Manno and George Dempster brought an action in New York State Supreme Court to challenge the same provisions. *Manno v. Comm'r New York City Dep't of Transp.*, No. 3522/85 (N.Y.Sup.Ct.) ("the *Manno* action"). Attorneys for plaintiffs, who also represented Manno and Dempster in their action, have at various times averred that between forty and seventy other individuals have been issued summonses charging them with violation of former section 211(10).

Plaintiffs William R. Ruiz, Kevin J. Nally and John Greco, Jr. brought this action on April 26, 1985. The Court placed this action on its suspense docket on August 9, 1985, pursuant to conditions agreed to by the parties. Defendants agreed to suspend all proceedings then pending before the State Department of Motor Vehicles, Traffic Violations Bureau to enforce former section 211(10), pending the outcome of the *Manno* action. Plaintiffs agreed that an amended complaint would be served in the *Manno* action to include the federal claims they had been asserting in this action, and that the plaintiffs in the *Manno* action would move for summary judgment after the defendants had served their answer to the amended complaint. Finally, the parties agreed that "except as set forth herein, no party shall be deemed to have waived any claim or defense in this matter." Plaintiffs' Exhibit C, filed October 15, 1987.

Accordingly, this action was held in abeyance while the *Manno* action went forward. On April 8, 1986 Acting State Supreme Court Justice Leonard Cohen issued a decision in which he denied in its entirety the plaintiffs' motion for summary judgment and granted the defendants' cross-motions, dismissing the complaint. Plaintiffs' Exhibit D, filed October 15, 1987. The Appellate Division granted the plaintiffs' applications, first for a temporary restraining order and then for a preliminary injunction prohibiting enforcement pending appeal of summonses issued under former section 211(10). Plaintiffs Ruiz, Nally and Greco were specifically named in the order and received the benefit of the injunction. The Appellate Division ultimately affirmed the decision below without opinion. Plaintiffs' Exhibit E, filed October 15, 1987. Manno and Dempster thereafter appealed to the New York State Court of Appeals pursuant to N.Y.Civ.Prac.L. & R. § 5601(b)(1) (McKinney 1978), but the appeal was dismissed on the ground that "no substantial constitutional question [was] directly involved." Plaintiffs' Exhibit F, filed October 15, 1987. The plaintiffs were thereafter denied leave to appeal by the Court of Appeals pursuant to N.Y.Civ.Prac.L. & R. § 5602(a)(1)(i) (McKinney 1978). Plaintiffs' Exhibit G, filed October 15, 1987.

Plaintiffs Ruiz, Nally and Greco reactivated this case on October 14, 1987 by order to show cause, seeking a temporary restraining order and preliminary injunction prohibiting adjudication of offenses involving former section 211(10). The Court granted on notice to defendants the temporary restraining order requested by plaintiffs, and set oral argument for October 23, 1987 on plaintiffs' application for a preliminary injunction. After hearing oral argument and requesting further submissions from the parties, the Court extended its

---

**3.** Plaintiffs set forth in their complaint additional grounds for challenging the enforcement of former section 211(10). With the exception of their federal pre-emption claim, which is discussed at 2.E., *infra*, these claims have no merit and will not be discussed by this Court. For example, plaintiffs claim that former section 211(10) is unenforceable because the city failed to post signs advising motorists of the weight limitation, and that this lack of notice constituted a denial of due process. On the contrary, the posting requirement imposed by N.Y. Veh. & Traf. Law § 1683 (McKinney 1986) is limited to the discretion of the local authority, *id.* § 1683(b), and the Constitution does not of its own force require the posting of local weight limitations.

restraining order to November 24, 1987. The restraining order was extended on consent to December 24, 1987 to accommodate adjustments in the parties' briefing schedule. The restraining order was then extended further on consent to January 22, 1988 to accommodate the Court.

In addition to temporary relief, plaintiffs seek summary judgment, joinder of two additional parties as plaintiffs, and class certification. Defendants have cross-moved for dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P. In addition, the State Defendant seeks costs, attorney's fees, and sanctions pursuant to Rule 11. Because both parties have treated defendants' cross-motions as motions for summary judgment, arguing the facts and submitting additional papers, the Court too will consider defendants' cross-motions as motions for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Because of its resolution of the summary judgment motions, the Court need not address plaintiffs' other requests for relief.

## DISCUSSION

A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)). While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983), "[t]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v.*

*General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra*, 804 F.2d at 12. The motion then

is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

As noted above, all parties in the instant case have moved or cross-moved for summary judgment. However, cross-motions for summary judgment do not warrant the granting of summary judgment unless the Court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank*, 426 F.Supp. 794, 796 (S.D.N.Y. 1976). *See also Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 716 (2d Cir.1985); *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313–14 (2d Cir.1981); *Home Ins. Co. v. Aetna Casualty and Surety Co.*, 528 F.2d 1388, 1390 (2d Cir.1976).

On the undisputed facts of this case, the Court determines that summary judgment is not appropriate on the theory of res judicata, but that defendants are entitled to summary judgment on the merits of this action.

## 1. Res Judicata

Before addressing the merits of the present action, the Court considers defendants' assertion that plaintiffs are bound by the outcome of the *Manno* action and are therefore precluded from pursuing their claims before this Court. In assessing the preclusive effect of the *Manno* action, this Court will look to the res judicata rules of New York State. "[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

New York courts recognize the important role of res judicata in "conserv[ing] judicial resources by discouraging redundant litigation." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331, 414 N.Y.S.2d 308, 311 (1979). To ensure that each litigant has at least one full hearing on his or her claim, however, res judicata is applied only when its strict requirements have been met. *Id.* at 485, 386 N.E.2d at 1331, 414 N.Y.S.2d at 311. The rule in New York State holds as follows: "as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action." *Id.* at 485, 386 N.E.2d at 1331, 414 N.Y.S.2d at 310–11.

The only serious objection to the application of res judicata in this case rests on the issue of identity of parties.[4] This require-

ment is not an absolute. *Id.* at 486, 386 N.E.2d at 1331, 414 N.Y.S.2d at 311. Rather, privity is an "amorphous term," *id.* at 486, 386 N.E.2d at 1331–32, 414 N.Y.S.2d at 312, lacking a "technical and well-defined meaning." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 265 N.E.2d 739, 743, 317 N.Y.S.2d 315, 320 (1970). The privity requirement denominates a general rule that under certain circumstances and for particular purposes,

> a person may by bound by a prior action to which he was not a party of record. [Privity] includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.

*Id.* at 277, 265 N.E.2d at 743, 317 N.Y.S.2d at 320 (citations omitted). *See also Tolley v. Am. Transit Ins. Co.*, 638 F.Supp. 1191, 1194 (S.D.N.Y.1986).

A determination of the identity of parties for purposes of res judicata is a factual question, *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Roode v. Michaelian*, 373 F.Supp. 53, 55 (S.D.N.Y.1974), requiring consideration of all the surrounding circumstances. *Watts v. Swiss Bank Corp., supra*, 27 N.Y. 2d at 277, 265 N.E.2d at 743–44, 317 N.Y.S. 2d at 320. Defendants note several facts to support their assertion that the instant plaintiffs should be bound by the judgment in the *Manno* action. First, plaintiffs here are represented by the same counsel that represented the plaintiffs in *Manno*.[5] Fur-

---

**4.** Plaintiffs do not argue, nor could they, that the New York State Supreme Court lacked jurisdiction to adjudicate a challenge to former section 211(10) on both state and federal grounds. Nor can they claim that the issues before the Court today were not necessarily decided in the *Manno* action. The Manno complaint was amended to include all the claims before the Court today. Justice Cohen's dismissal of the *Manno* action necessarily constituted a holding against the plaintiffs on all claims. It does not matter that some of Manno's claims may not have been extensively discussed in Justice Cohen's decision. *Winters v. Lavine*, 574 F.2d 46, 61 (2d Cir.1978); *Tang v. Appellate Division*, 487 F.2d 138, 141 n. 2 (2d Cir.1973), *cert. denied*, 416

U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). *See also Grubb v. Public Utilities Comm'n*, 281 U.S. 470, 477–78, 50 S.Ct. 374, 377–78, 74 L.Ed. 972 (1930) ("The question of the constitutional validity of the order was distinctly presented by the appellant's petition and necessarily was resolved against him by the judgment affirming the order. Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any the less an adjudication of it.").

**5.** Furthermore, plaintiffs' counsel indicated at oral argument that he represents upwards of forty individual truck drivers who have been charged with violating former section 211(10).

thermore, the *Manno* action was brought as a class action, although the purported class was never certified. In addition, plaintiffs stipulated that their federal claims would be added to an amended complaint in the *Manno* action. Finally, plaintiffs were specifically named as beneficiaries of the interim relief provided by the Appellate Division in the *Manno* action.

Courts have refused to apply res judicata notwithstanding that the same counsel represented the parties in both proceedings. *Green v. Santa Fe Inds., Inc.,* 70 N.Y.2d 244, 254, 514 N.E.2d 105, 109, 519 N.Y.S.2d 793, 797 (1987). *Accord, Pollard v. Cockrell,* 578 F.2d 1002, 1009 (5th Cir.1978); *Ramey v. Rockefeller,* 348 F.Supp. 780, 785 (E.D.N.Y.1972) (Friendly, C.C.J.). It is not sufficient that the named plaintiffs in the later action were incidental beneficiaries of relief granted in the prior action. *Cf. Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 451 (7th Cir.1977) (dismissal of plaintiffs' claim in employment discrimination action "will not bar a later action by other parties, ... and plaintiffs here will benefit from any declaratory or injunctive relief that may be granted in such an action"). Where the prior action is brought by individuals who purport to be members of a class sharing similar interests, but where the class is not certified, an adverse decision in the prior action will not preclude other individuals who were not personally involved in the prior action. *Ramey v. Rockefeller, supra,* 348 F.Supp. at 785 n. 2 (The characterization of the prior state action as a class action "seems to rest solely on the caption of the complaint; we can see no determination by the state courts ... that a class action was appropriate or that representation was adequate. We would be loathe to extend the concept of *res adjudicata* to class actions, particularly those involving constitutional claims, without such protection for absent class members."); *Olson v. Bd. of Educ.,* 250 F.Supp. 1000, 1004 (E.D.N.Y.), *appeal dismissed,* 367 F.2d 565 (2d Cir.1966).

The common interests of the instant plaintiffs and of Manno and Dempster in invalidating former section 211(10) are insufficient to warrant the application of res judicata on the basis of identity of interests. In *Watts v. Swiss Bank Corp., supra,* the Court of Appeals held that an adverse outcome in a suit brought by beneficiaries of a decedent's estate claiming ownership of the proceeds from a joint bank account precluded a second action by the executor of the estate. The result depended at least in part on the fact that both actions involved claims to the identical property. *Green v. Santa Fe Inds., Inc., supra,* 70 N.Y.2d at 254, 514 N.E.2d at 109, 519 N.Y.S.2d at 797 (explaining holding in *Watts*). In *Green,* by contrast, the two actions involved the discrete claims of individual stockholders who held separate blocks of stock. The second action was not precluded, although the theory of recovery was the same in both cases. *Id.* at 254, 514 N.E.2d at 109, 519 N.Y.S.2d at 797. *Accord, Pollard v. Cockrell, supra,* 578 F.2d at 1009 (no preclusion where plaintiffs in the two actions "shared only an abstract interest in enjoining enforcement of the ordinance"). Similarly, plaintiffs here are challenging enforcement actions that are totally independent of the actions challenged in *Manno.* The identity of interests is therefore insufficient to apply res judicata on that basis.

Although preclusion may not be applied here on the basis of the parties' identity of interests, plaintiffs' stipulation adding their claims to the complaint in the ongoing *Manno* action supports an argument that the instant plaintiffs either controlled the state action or authorized the state plaintiffs to represent their interests.

A nonparty may be precluded by the outcome of a prior action where he "can be said to have controlled the conduct of the prior action to further his own interests." *Green v. Santa Fe Inds., Inc., supra,* 70

Plaintiffs' counsel has represented for many years the Industry Advancement Fund for concrete producers, and the named plaintiffs are employed as truck drivers for companies involved in the ready-mix concrete industry. Affidavit of Alexander A. Miuccio ¶ 21, filed October 15, 1987.

N.Y.2d at 254, 514 N.E.2d at 108, 519 N.Y. S.2d at 796–97. Thus in *Watts*, the plaintiff was precluded where the court found "he had practical control of all proceedings." *Watts v. Swiss Bank Corp., supra,* 27 N.Y.2d at 277, 265 N.E.2d at 744, 317 N.Y.S.2d at 321. In *Green*, on the other hand, the second action was not precluded where there was "no indication that the prior action 'was managed as [the plaintiffs] thought it should be.'" *Green v. Santa Fe Inds., Inc., supra,* 70 N.Y.2d at 254, 514 N.E.2d at 109, 519 N.Y.S.2d at 797 (quoting *Watts*). In the instant case it might be inferred from plaintiffs' stipulation that they in fact controlled the *Manno* action. Plaintiffs' attorney, however, represented at oral argument that the instant plaintiffs had no awareness of the pending state action, exerted no control over that action, and that he authorized the amendment of the *Manno* complaint in his capacity as attorney for Manno and Dempster, not in his capacity as attorney for the instant plaintiffs. Because it is unclear from the undisputed facts of the case whether plaintiffs exercised control over the *Manno* action, the Court will not at this time preclude plaintiffs on that basis.

■ A litigant may also be precluded, though a nonparty to a prior action, if a party to the prior action had authority to represent his interests. "Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Electric, Inc. v. Levine, supra,* 554 F.2d at 1233. In *Tarpley v. Salerno,* 803 F.2d 57 (2d Cir.1986), this Circuit held that the relationship between voters challenging the requirements for nominating petitions under state election law and political candidates who had earlier made an unsuccessful challenge to the same laws in state court was "not close enough to be viewed as an authorization by the [voters] to the [candidates] to represent the voters in the legal proceedings in the state courts." *Id.* at 60. The relationship between the instant plaintiffs and Manno and Dempster would likewise be insufficient in itself to form a basis for an implied

authority of representation in this case. The stipulation amending the *Manno* complaint, however, might be viewed as an express authorization.

Although the imposition of res judicata in this case may not be inappropriate, the Court is unwilling to preclude plaintiffs in light of the present posture of the case and in view of the disposition of this action on the merits. *See Katz v. Blum,* 460 F.Supp. 1222, 1224 (S.D.N.Y.1978), *affirmed mem.,* 603 F.2d 213 (2d Cir.1979). *Cf. Pettis Moving Co. v. Roberts,* 784 F.2d 439, 441 (2d Cir.1986) ("[W]hen the res judicata issue raises difficult and important questions of federalism and comity, and the merits can be readily decided in favor of the party urging preclusion, we think it better to avoid the unnecessary resolution of the res judicata question.").

### 2. *The Merits*

Plaintiffs assert several arguments in support of their claim that former section 211(10) is unenforceable against them. They claim that the regulation was void for vagueness, that it was amended without proper authority in violation of plaintiffs' due process rights, that the weighing of trucks by unauthorized personnel violated plaintiffs' Fourth Amendment rights, and that the regulation violates the Commerce Clause. The Court considers each of these contentions in turn, and then discusses the issue of federal pre-emption.

### A. Vagueness Challenge

Plaintiffs claim that former section 211(10), when considered in light of the relevant state and federal statutes, was unconstitutionally vague. Enforcement of the ordinance against them, the argument goes, would constitute a violation of their due process rights under the Fifth Amendment, applied to the states through the Fourteenth Amendment.

If a statute or local ordinance is to survive a constitutional challenge on vagueness grounds, it must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair

warning." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (footnote omitted). *See also, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) (loitering ordinance void for vagueness because it "fail[ed] to give a person of ordinary intelligence fair notice that his contemplated conduct [was] forbidden by the statute").

■ Vagueness challenges are most often applied to criminal statutes and to enactments implicating constitutionally protected behavior. Where the challenged statute, on the other hand, regulates only unprotected behavior and is not criminal in nature, then the vagueness challenge must be assessed in light of the particular facts at hand. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted). *See also United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *Garner v. White,* 726 F.2d 1274, 1277 (8th Cir.1984). Because the conduct proscribed under former section 211(10) implicates no constitutionally protected rights,[6] and because the ordinance is civil rather than criminal in nature,[7] plaintiffs' vagueness challenge will be assessed in light of the facts before the Court. The Court need not consider whether the ordinance would have been impermissibly vague if applied to a trucker carrying on a federal highway within New York City a load exceeding the local 72,380 pound limit, but not the federal 80,000 pound limit.

The degree of vagueness tolerated under the Constitution varies in part according to the nature of the challenged enactment. Economic regulations, such as the one at hand, are subject to a less stringent vagueness test than those governing constitutionally protected rights. *Textile Workers Pension Fund v. Std. Dye & Finishing Co.,* 725 F.2d 843, 855 (2d Cir.), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984). The Supreme Court explained the rationale for this distinction in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., supra,* 455 U.S. 489, 102 S.Ct. 1186.

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Id.* at 498, 102 S.Ct. at 1193 (footnotes omitted). *Accord, Chalmers v. City of Los Angeles,* 762 F.2d 753, 757 (9th Cir.1985). Because these considerations fit the case at hand, the Court will apply the less strict

---

**6.** Plaintiffs' contention that the ordinance infringes their constitutional right to travel is frivolous at best. The right to travel prohibits discrimination against residents of other states and has most often been applied to migration cases challenging durational residency requirements. *See, e.g., Attorney General of the State of New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). Thus, in *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Court explained that "the right of interstate travel must be seen as insuring new residents the same right to vital government benefits and privileges in the States to which they migrate as are enjoyed by other residents." *Id.* at 261, 94 S.Ct. at 1084. *Accord, Fisher v. Reiser,* 610 F.2d 629, 634 (9th Cir.1979), *cert. denied,* 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1124 (1980). To find plaintiffs' activity protected under the right to travel would trivialize that right and the Constitution itself. Citizens have the right to travel freely from state to state. The Constitution does not protect any right to drive trucks of any particular weight from state to state, and there has been no allegation of any discrimination against out-of-state residents.

**7.** Violation of the ordinance is sanctioned only by the imposition of civil fines. There is no threat of incarceration. Furthermore, there is no particular stigma attached to a violation, such as there was in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499–500, 102 S.Ct. 1186, 1193–94, 71 L.Ed. 2d 362 (1982), to justify treating the ordinance as "quasi-criminal" for the purposes of a vagueness analysis.

standard to plaintiffs' vagueness challenge to former section 211(10).[8]

An economic regulation imposing only civil fines is void for vagueness only if it is " 'so vague and indefinite as really to be no rule or standard at all.' " *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers,* 484 F.Supp. 1008, 1014 (N.D.Ga.1979) (*quoting A.B. Small Co. v. Am. Sugar Refining Co.,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925)), *affirmed sub nom. Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). In other words, uncertainty in an economic regulation is not enough to render it unconstitutionally vague. "[I]t must be substantially incomprehensible." *Exxon Corp. v. Busbee, supra,* 644 F.2d at 1033. *See also Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir.1984) (civil statute violates due process only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all, or if it is substantially incomprehensible).

Applying the appropriate standard to the challenge before it, this Court has determined that former section 211(10) was not substantially incomprehensible, but that a reasonable person, considering the ordinance in light of the relevant state and federal statutes, would conclude that trucks carrying loads in excess of 80,000 pounds were prohibited on federal highways within New York City. Plaintiffs do not challenge the clarity of the text of former section 211(10), itself. As written, former section 211(10) clearly prohibits the operation on streets and highways within New York City of any truck weighing in excess of 73,280 pounds.[9] Rather, plaintiffs contend that the reach of former section 211(10) becomes impermissibly vague when it is interpreted in light of section 385(20) of New York State's Vehicle and Traffic Law and in light of 23 U.S.C. § 127(a). Consequently, the Court's vagueness analysis of the ordinance will focus largely on the relevant state and federal statutes.

The STAA limits the scope of permissible state regulation of the size, weight and arrangement of trucks travelling of federal highways. Section 127(a) of Title 23, in particular, prohibits states from permitting vehicles exceeding 80,000 pounds to travel on federal highways within their borders, and threatens the withholding of federal highway funds from states that do not permit the passage of trucks weighing up to 80,000 pounds.[10] Section 385(20) of New York's Vehicle and Traffic Law contains two provisions to ensure compliance with the requirements of the STAA. First, the state and its political subdivisions are prohibited from enacting or enforcing any law violating the STAA. Second, any local law resulting in a notification of an imminent loss or withholding of federal highway aid is deemed null and void and unenforceable, to the extent it is inconsistent with the STAA.[11]

The reach of section 385(20) is not brilliantly clear, but to give force to both of its provisions, in accordance with accepted precepts of statutory construction, the Court recognizes a distinction between local laws

---

8. Plaintiffs argue that because they are individual operators without the resources of a large business, they could not be expected to investigate local ordinances in the way that justify a court's normal lenience in scrutinizing economic regulation. This argument is not persuasive. In *Chalmers v. City of Los Angeles,* 762 F.2d 753, 757 (9th Cir.1985), the Court of Appeals for the Ninth Circuit used the less strict test in vagueness challenge to an economic regulation brought by an individual pushcart vendor.

9. For the text of former section 211(10), *see* note 2, *supra.*

10. For the text of 23 U.S.C. § 127(a), *see* note 1, *supra.*

11. N.Y. Veh. & Traf. Law § 385(20) (McKinney 1986) provides:

> ... [T]he state, a city, county, town, village, public authority, ... or any department, agency, subdivision or other entity thereof, shall not enact nor enforce any law, statute, ordinance, rule or regulation with respect to vehicle dimensions or weights which shall violate any of the provisions of the [STAA]. Any such law, statute, ordinance, rule or regulation which results in a notification of an imminent loss or withholding of federal highway aid to the state shall to the degree inconsistent hereafter be deemed null and void and shall not be enforced.

which may "violate" the STAA, and local laws which simply result in a notification of loss of funding. If any local law resulting in a notification of a loss of funding were considered a violation of the STAA, then the second sentence of section 385(20) would be entirely superfluous. A law that cannot be enacted or enforced pursuant to the first sentence of section 385(20) is already unenforceable to the extent it may be inconsistent with the STAA.

The STAA contains a wide range of provisions affecting local highway regulations. Some of these provisions are expressed as outright prohibitions against state action. For example, states are prohibited from barring tandem trailers on federal highways,[12] and states are forbidden from permitting trucks weighing more than 80,000 pounds.[13] By contrast, there is no affirmative requirement to allow trucks weighing up to 80,000 pounds. Rather, the STAA threatens the withholding of federal funds from states which do not permit 80,000 pound trucks on their federal highways.

In recognizing the distinction between funding provisions and prohibitory provisions in the STAA, the Court can give effect to both sentences of section 385(20). A local law violating a prohibitory provision of the STAA may not be enacted or enforced. A local law that is contrary to a funding provision of the STAA, on the other hand, is unenforceable only upon notification of an imminent loss of federal funds, and then, only to the extent that the local law is inconsistent with the STAA.

This conclusion is bolstered if the consequences of an alternative interpretation, put forward by plaintiffs, are considered.

Plaintiffs argue that former 211(10), because it is contrary to a funding provision of the STAA, must be considered a violation and therefore void and unenforceable *ab initio* through operation of the first sentence of section 385(20). Such a result, however, would leave federal highways within New York City without any weight regulations, in violation of an outright prohibition of the STAA, and leave New York State even more vulnerable to a loss of federal funding. Such a result is totally at odds with the intention of the New York State Legislature, which was, all parties agree, to preserve federal highway funds for the State. *Cf. United States v. Jackson*, 390 U.S. 570, 589, 88 S.Ct. 1209, 1220, 20 L.Ed.2d 138 (1968) (invalid death penalty provisions of Federal Kidnaping Act severable from remaining penalty provisions, because differential punishment essential to purposes of Act and total invalidation of all penalties would totally obliterate distinction between penalties applicable to those who do and those who do not harm their victims).[14]

■ Section 385(20), as interpreted by the Court, does not render former section 211(10) unenforceable. Former section 211(10) contravened a funding provision of the STAA, not a prohibitory provision. Therefore the second sentence of section 385(20) applies, not its first sentence. Accordingly, former section 211(10) was unenforceable only to the degree inconsistent with the STAA, and then, only upon notification of an imminent loss of funding. It is undisputed that New York State never received any notification of an imminent

---

12. 49 U.S.C. § 2311(c) provides that "[n]o State shall prohibit commercial motor vehicle combinations consisting of a truck tractor and two trailing units on any segment of [federal highway]."

13. 23 U.S.C. § 127(a) provides in part, "the maximum weight to be allowed ... may not exceed eighty thousand pounds." *See* note 1, *supra*.

14. Furthermore, the Court's interpretation of section 385(20) is consistent with prevailing federal pre-emption doctrine. A local statute in direct conflict with a valid federal enactment is invalid under the federal Supremacy Clause. "[F]ederal law may ... pre-empt state law to the extent it actually conflicts with federal law." *E.g., California Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed. 2d 613 (1987). The first sentence of section 385(20), then, forestalls direct collisions with federal law. A local law that contravenes a condition for federal funding, but which is not in direct conflict with a federal prohibitory statute, is not necessarily vulnerable to federal preemption. *See* discussion at 2.E., *infra*. The second sentence of section 385(20), then, accomplishes the purposes of the legislature by conforming these local laws to the degree necessary to maintain eligibility for federal funds.

loss of federal highway funds. Section 385(20), then, had no impact on the enforceability of former section 211(10).

The Court recognizes that its interpretation of section 385(20) may not be inevitable. Nevertheless, the existence of two conceivable interpretations of an economic regulation will not render the regulation void for vagueness. In *Exxon Corp. v. Busbee, supra,* 644 F.2d 1030, for example, the court recognized that alternative interpretations of the challenged regulation were available, but nevertheless refused to declare the regulation unconstitutionally vague.

> [W]hile their constructions differ, the parties themselves have offered possible interpretations of section 1104.1. These attempts at statutory construction illustrate that section 1104.1 is, while most assuredly *not* a "model of clarity," at least amenable to some sensible construction. Thus, it does alert the parties to the character of the proscribed conduct, and does amount to something more than "no rule ... at all."

*Id.* at 1034 (citations omitted).

Similarly, *Chalmers v. City of Los Angeles, supra,* 762 F.2d 753, involved a vagueness challenge to local ordinances that were in direct conflict, one banning pushcart vendors entirely from broad areas of Los Angeles, the other permitting pushcart vendors on condition they stop for only ten minutes at a time and only at the request of customers. *Id.* at 755. The plaintiff, confronted with these conflicting ordinances, consulted city officials, after which she concluded that it would be permissible to sell her goods on the street so long as she observed the ten minute stop rule. When she tried to sell her goods, however, she was harassed, threatened with arrest and prosecution, and ultimately prevented from selling by Los Angeles police officers who contended that her activity was illegal. *Id.* at 756.

The court in *Chalmers* based its conclusion that the challenged ordinances were unconstitutionally vague not on their facial conflict, but on their enforcement, which was inconsistent with the advice the plaintiff had received when she consulted city officials. "We do not hold that the ordinance scheme itself was necessarily a violation of due process. Rather, the due process violation occurred in the manner in which this inconsistent scheme was implemented and enforced." *Id.* at 758. *See also Brass Plating Co. v. Town of Windsor,* 639 F.Supp. 873, 880–81 (D.Conn.1986) (local regulations requiring visual inspection of metal hydroxide wastes void for vagueness where waste acceptable to Environmental Health Officer was rejected by landfill personnel).

In contrast to the plaintiff in *Chalmers,* plaintiffs here made no effort to clarify the scope of 211(10) prior to driving their trucks on federal highways within New York City. Plaintiffs cannot justifiably rely on their own self-serving interpretation of the ordinance. In fact, City officials had publicly declared their own interpretation of the ordinance and their uniform enforcement practice as early as 1983, prior to any enforcement action against any of the instant plaintiffs. Plaintiffs' Exhibit J, filed October 15, 1977. It is conceded that former section 211(10) was enforced against plaintiffs in a manner totally consistent with the City's announced enforcement policy. Indeed, it is not alleged that former section 211(10) was ever enforced against anyone in any manner inconsistent with the announced City policy. Accordingly, under the appropriate standard for assessing a vagueness challenge to a civil economic regulation, this Court concludes that plaintiffs had adequate notice that driving trucks in excess of 80,000 pounds on federal highways within New York City was prohibited, and that former section 211(10), as applied against them, is not impermissibly vague.

### B. Unauthorized Amendment Procedure Claim

The second ground asserted by plaintiffs for the invalidation of former section 211(10) is that the informal enforcement policy adopted by the City constituted an unauthorized amendment of the ordinance in violation of plaintiffs' Fifth Amendment

right to due process, applicable to the states through the Fourteenth Amendment.

■ Section 1105 of the New York City Charter sets forth a procedure for amendment of City regulations. This procedure provides for publication of proposed amendments, and for an opportunity for public comment. Defendants concede that none of the procedures mandated by section 1105 were adhered to when the City adopted its informal enforcement policy. Nevertheless, plaintiffs' argument must fail, because the City's adoption of its enforcement policy does not constitute an amendment to former section 211(10). Accordingly, section 1105 does not apply. Rather, as discussed more fully above in this Court's analysis of plaintiffs' vagueness challenge, *see* discussion at 2.A., *supra*, the City's enforcement procedure results from a valid interpretation of the ordinance as written.

Plaintiffs' due process arguments are similar to those rejected by the Second Circuit in *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1 (2d Cir.1985), which involved a challenge to the enforcement of City regulations enforcing the weight of eggs sold in supermarkets. The City defended its regulations in part with an affidavit stating that its enforcement practice was less stringent than its published regulations. *Id.* at 3. The affidavit showed "in greater detail than was available from the published regulation the City's actual requirements for egg weights." *Id.* at 4. The court upheld the regulation because there was no showing that the City had not

in fact adhered to its unpublished deviation tolerances, or that the tolerances were unreasonable. *Id.* Similarly, in the instant case, plaintiffs do not assert that the City deviated from its informal enforcement practice, and this Court has rejected plaintiffs' substantive arguments that former section 211(10), as applied to them, was unreasonable.

### C. Unauthorized Seizure Claim

Plaintiffs next contend that the regulation enforcement officers who stopped their trucks and ordered them weighed were not authorized to do so, and therefore the stop constituted an unreasonable search and seizure in violation of the Fourth Amendment, which is applicable to the states through the Fourteenth Amendment.

■ Plaintiffs' argument depends on three major subsidiary propositions: (1) that the regulation enforcement officers acted outside the scope of their authority in stopping plaintiffs' trucks and ordering them to be weighed; (2) that the stop and weighing is the sort of government behavior that implicates Fourth Amendment rights; and (3) that a stop conducted by unauthorized personnel is *per se* a violation of plaintiffs' Fourth Amendment rights. Plaintiffs must succeed on each of these subsidiary propositions if they are to prevail on their Fourth Amendment claim. Assuming for the purposes of this motion that plaintiffs are correct with respect to the first two propositions,[15] their argument

---

**15.** Plaintiffs present a persuasive argument that the regulation enforcement officers who conducted the challenged stops were not authorized to do so. These officers, appointed pursuant to Section 434a–7.0(e) of New York City's Administrative Code, had the powers of "peace officers" "while in performance of their official duties." The powers of peace officers include "[t]he power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties." N.Y.Crim.Proc.Law § 2.20(3) (McKinney 1981) (amended 1985). The statute defines "special duties" to be "the duties of [their] office, pursuant to the specialized nature of [their] particular employment, whereby [they are] required or authorized to enforce any general, special, or

local law or charter, rule, regulation, judgment or orders." *Id.* § 2.20(9).

At the time the challenged stops took place, police officers, but not peace officers, were authorized to conduct such stops. New York, N.Y., Traffic Regulations art. 19, § 212 (amended 1985). Following a substantial overhaul of the N.Y. Criminal Procedure Law in 1980, the categories of "peace officer" and "police officer" are now mutually exclusive. *Id.* § 2.10, practice commentary (by Joseph W. Bellacosa), p. 51. "Thus, care must be taken in identifying and assessing which category an officer qualifies as." *Id.* Clearly, then, the regulation enforcement officers who conducted the challenged stops cannot derive their authority from former section 212, and defendants have

still fails for the reason that a stop conducted by unauthorized personnel does not constitute *per se* a violation of the Fourth Amendment.

Plaintiffs rely on *United States v. Soto-Soto*, 598 F.2d 545 (9th Cir.1979) for their proposition that a search conducted by unauthorized personnel is *per se* unreasonable and therefore a violation of the Fourth Amendment. In *Soto-Soto*, an FBI agent had searched the defendant's pickup truck at the border as the defendant was entering the United States from Mexico. The agent did not have a warrant to conduct the search, nor did he have probable cause. The agent conducted the search simply because the defendant was driving a late-model pickup truck, and statistics showed that such vehicles being driven across the border were likely to have been stolen. *Id.* at 546.

The court held that the search was illegal, and that contraband discovered in the search was properly suppressed. *Id.* at 550. If the search had been conducted "in pursuit of general law enforcement away from the border, there would be no question that the search was illegal." *Id.* at 549. A federal statute authorizes customs officers and officers of the Immigration and Naturalization Service to conduct warrantless border searches without probable cause.[16] The court rejected the Government's argument that the search could be justified as a border search. "There was no delegation of authority to this agent to conduct this search. * * * Congress and the courts have specifically narrowed the border searches to searches conducted by customs officials in enforcement of customs laws." *Id.* at 549. In reaching its conclusion that the search in *Soto-Soto* was illegal, the court found first that the search was unreasonable when considered in light of general law enforcement standards, and second that the agent lacked the special authority to conduct a border search without probable cause.

The Ninth Circuit itself has expressly repudiated the interpretation of *Soto-Soto* urged by the plaintiffs. In *United States v. Harrington*, 681 F.2d 612 (9th Cir.1982), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), the defendant challenged a warrant-authorized search of his residence on the ground that the underlying investigation leading up to the search had been conducted by customs officers, whereas drug enforcement officers had exclusive authority under federal law to investigate federal drug-law violations. *Id.* at 613. The warrant was obtained pursuant to the procedure set forth in Rule 41, Fed.R.Crim.P., and the search complied fully with both the warrant and the Fourth Amendment. *Id.*

Rejecting the defendant's contention that *Soto-Soto* controlled and that the fruits of the search must therefore be suppressed, the court explained that "when measured against normal fourth amendment standards, the search in *Soto-Soto* was patently unreasonable. We approved the suppression of the evidence seized not merely because the search violated a statute, but because the statutory violation undermined constitutional protections." *Id.* at 614 (citation omitted). The Ninth Circuit reversed the district court, which had relied on *Soto-Soto*, and held that "a court

presented no alternative basis for their authority.

The Court will accept plaintiffs' assertion that the challenged stops implicate Fourth Amendment rights. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979) ("[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.").

**16.** 19 U.S.C. § 482 provides in part:
Any of the officers or persons authorized to board or search vessels may stop, search, and examine ... any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law....
Section 482 authorizes not only customs agents, but also border patrol officers of the Immigration and Naturalization Service, to conduct border searches. *United States v. Wright*, 476 F.2d 1027, 1030-31 (5th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973); *United States v. Thompson*, 475 F.2d 1359, 1362-63 (5th Cir.1973).

should not automatically suppress evidence seized by an officer who, for some technical reason, should not have conducted the search. There must be an exceptional reason, typically the protection of a constitutional right, to invoke the exclusionary rule. We can find no exceptional reason here." *Id.* at 615 (citations omitted).

Similarly, this court sees no extraordinary circumstances in the present case to justify invalidation of the stops complained of by plaintiffs. Plaintiffs do not argue that the fact of the stops themselves or that the conduct of the regulation enforcement officers in carrying out the stops were unreasonable under traditional Fourth Amendment standards. Rather, plaintiffs rest their Fourth Amendment claim solely upon their assertion that the regulation enforcement officers were not authorized to conduct the stops. Because their argument fails as a matter of law, plaintiff's Fourth Amendment claim must fall.

This Court finds additional support for its result in *United States v. Burke*, 517 F.2d 377, (2d Cir.1975), where the Second Circuit refused to suppress evidence obtained from a search that did not conform to the requirements of Rule 41(c), Fed.R. Crim.P. *Id.* at 381. The court explained its holding as follows.

> [C]ourts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude.... [V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id.* at 386–87 (footnotes omitted). It would be appropriate to apply similar standards to the present case, where the challenge is based on an asserted violation of internal regulations of the New York City Department of Transportation. There is in this case no allegation of the kind of prejudice recognized in *Burke*, nor is there any allegation that enforcement officers or their superiors deliberately disregarded the requirements of former section 212.

Furthermore, this Court notes the general proposition, articulated by the Supreme Court in *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), that violation of an agency regulation does not in itself make out a Fourth Amendment claim. In *Caceres*, the Supreme Court rejected a Fourth Amendment challenge to the introduction of audio tapes that an Internal Revenue Agent had made, in contravention of IRS regulations, of an interview with a taxpayer. The Court rejected the taxpayer's Fourth Amendment claims after concluding that the Constitution did not require the IRS to adopt the regulations in question, nor did the violation of the regulations raise any constitutional question. *Id.* at 751–52, 99 S.Ct. at 1471–72. The Court disposed of the taxpayer's related due process claim because he could not show any reasonable reliance on a regulation promulgated for his guidance or benefit and a corresponding loss caused by its violation. "Respondent cannot reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct." *Id.* at 753, 99 S.Ct. at 1472.

Similar considerations impel this Court to conclude that plaintiffs here have no legitimate Fourth Amendment claim based on the asserted violation of former section 212 of New York City's Department of Transportation Regulations. The Constitution certainly did not require the City to adopt former section 212 as it was written when the challenged summonses were issued. In fact, the City has subsequently amended the provision expressly to authorize regulation enforcement officers to enforce truck weight limits on roads and highways within the city.[17] The behavior

---

17. New York, N.Y., Dept. of Transp. Regs., art. 19, § 216 provides in part, as amended:

Any member of the police force of the City of New York or any department of transportation employee authorized and empowered by law to enforce these rules and regulations, having reason to believe that any vehicle described in this article or the load thereon is

of the regulation enforcement officers is not alleged to have been unreasonable under traditional Fourth Amendment standards. Plaintiffs can claim no reliance on the limitations imposed by the language of former section 212. They cannot reasonably claim that they based their decision to drive their trucks within New York City on the regulation limiting enforcement of weight limitations to police officers and inspectors of the Bureau of Weights and Measures.

For all of the foregoing reasons, this Court rejects plaintiffs' Fourth Amendment claim.

### D. Commerce Clause Claim

Plaintiffs further argue that former section 211(10) imposes an unreasonable restraint on interstate commerce and is therefore invalid under the Commerce Clause.

■ In evaluating a Commerce Clause challenge to a local safety regulation that does not discriminate between local and out-of-state interests, this Court is to apply a balancing test, weighing the local safety interest served against the degree of interference with interstate commerce. *Nat'l Tank Truck Carriers, Inc. v. City of New York*, 677 F.2d 270, 273 (2d Cir.1982) (*citing Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)).

"Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be *upheld unless the burden imposed on such commerce is clearly excessive* in relation to the putative local benefits."

*Id.* (emphasis added). In no field is the deference to local regulation greater than in the area of highway safety, and highway safety regulations enjoy a strong presumption of validity. *Id.* (*citing Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443, 444 & n. 18, 98 S.Ct. 787, 795, 795 & n. 18, 54 L.Ed.2d 664 (1978)). *See also, e.g., Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670, 101 S.Ct. 1309, 1316, 67 L.Ed.2d 580 (1981).

■ Plaintiffs have failed to meet their burden to show that former section 211(10) imposes an unreasonable burden on interstate commerce. The hazards caused by overweight trucks are well known, not only because of the greater damage they cause when involved in accidents and the greater likelihood of an accident when a truck is overloaded, but also because of the added wear heavy trucks cause to highways on which they travel. Plaintiffs do not challenge the 72,380 pound weight limitation on City streets, and former section 211(10), as enforced, was entirely consistent with the uniform 80,000 limit that Congress intended to impose on the federal highway system. Any burden that former section 211(10) placed on interstate commerce was not clearly excessive in relation to its local benefits. Accordingly, plaintiffs' Commerce Clause argument must fail.

### E. Federal Pre-emption

Plaintiffs alleged in their complaint that former section 211(10) conflicts with 23 U.S.C. § 127(a), and is therefore void under the Supremacy Clause. Complaint ¶ 34. The issue, however, has not been briefed by either party since plaintiffs revived this case on October 14, 1987. Nevertheless, the Court deems it advisable to discuss the issue, since the case law concerning the interplay between the STAA and local regulations has uniformly turned on the issue of pre-emption. *See New York State Motor Truck Ass'n, Inc. v. City of New York*, supra, 654 F.Supp. 1521; *United States v. State of Florida*, 585 F.Supp. 807 (N.D.Fla. 1984); *United States v. State of Connecticut*, 566 F.Supp. 571 (D.Conn.), *affirmed mem.*, 742 F.2d 1443 (2d Cir.1983), *affirmed mem.*, 465 U.S. 1014, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). In each of these cases, local regulations seeking to ban or to restrict the use of tandem trucks on federal highways were preempted as conflicting with the tandem truck provisions of the STAA.

unlawful, is authorized to stop measure and weigh the same ...

(replacing former § 212, renumbered).

The Supreme Court has had many opportunities to set forth the proper analytic approach to a pre-emption claim. Federal law can pre-empt state law either expressly or impliedly. Implied pre-emption will be found where federal law has entirely displaced state law, or where a direct conflict exists. One formulation of the analysis is as follows:

> In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. * * * As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*California Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (citations omitted). *See also, e.g., California Coastal Comm'n v. Granite Rock Co.,* —— U.S. ——, 107 S.Ct. 1419, 1425, 94 L.Ed.2d 577 (1987); *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); *Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986).

For purposes of pre-emption analysis, this case is fundamentally different from a case involving the tandem truck provisions of the STAA. The STAA expressly forbids state regulation banning or restricting the operation of tandem trucks on federal highways.[18] By contrast, uniform weight limitations are promoted not by a prohibition against more restrictive local regulation, but by the threat of a loss of federal funds to states which do not permit trucks weighing 80,000 pounds to use federal highways within their borders.[19] Since Congress chose to make this distinction in enacting the STAA between prohibitions against inconsistent state laws and funding sanctions, this Court must give an effect to this distinction. The antifunding sanction contained in 23 U.S.C. § 127(a), then, cannot be construed as an express pre-emption of a local regulation, such as former section 211(10), imposing weight limitations more strict than the federal 80,000 pound limit.

If there is no express pre-emption of former section 211(10), the Court must then consider whether 23 U.S.C. § 127(a) impliedly pre-empted the regulation. The first basis for implied pre-emption, federal

---

**18.** 49 U.S.C. § 2311 provides in part:

**(a) Prohibition against certain length limitations on semitrailers and trailers**

*..., [N]o State shall establish, maintain, or enforce* any regulation of commerce which imposes a vehicle length limitation of less than forty-eight feet on the length of the semitrailer unit operation in a truck tractor-semitrailer combination, and of less than twenty-eight feet on the length of any semitrailer or trailer operating in a truck tractor-semitrailer-trailer combination, on any segment of the National System of Interstate and Defence Highways ...

\* \* \* \* \* \*

**(c) Prohibition by State of combination of truck tractor and two trailing units forbidden**

*No State shall prohibit* commercial motor vehicle combinations consisting of a truck tractor and two trailing units on any segment of the National System of Interstate and Defense Highways ...

(emphasis added).

**19.** For the text of 23 U.S.C. § 127(a), *see* note 1, *supra.* It is also worth noting, in this context, that the antifunding sanction of section 127(a) against states that do not permit 80,000 pound trucks is accompanied by a direct prohibition against the states permitting trucks weighing in excess of 80,000 pounds.

displacement of local laws, clearly does not apply here. The federal statute contains no regulations at all, but is merely a funding statute. Rather, it directs the states to regulate federal highways within their borders. Thus, local regulations are expressly contemplated, and in fact required by the federal statute. *See California Coastal Comm'n v. Granite Rock Co., supra,* 107 S.Ct. at 1426–27. Section 127(a) of Title 23 was not meant to displace local regulation of vehicle weights on federal highways.

Finally, the STAA would preempt former section 211(10) if there were an actual conflict between local and federal law. A conflict exists, for pre-emption purposes, if it is physically impossible to comply with federal and state law or if state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Clearly, it was not impossible to comply simultaneously with former section 211(10) and with 23 U.S.C. § 127(a). Even interpreting the local regulation most restrictively, and not as it was enforced, one would simply have to drive trucks weighing no more than 72,380 pounds within New York City in order to comply with both local and with federal law.

In assessing whether former section 211(10) created an obstacle to congressional purpose, and is properly pre-empted on that basis, the Court must keep in mind the nature of regulation involved. Where federal law regulates an area of the law traditionally reserved for the states, a Court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed.2d 1447 (1947); *Pettis Moving Co. v. Roberts,*

784 F.2d 439, 441 (2d Cir.1986). Health and safety matters are primarily and historically a matter of local concern, and local regulations in this area are presumed valid when challenged on supremacy grounds. *Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 715, 719, 105 S.Ct. 2371, 2376, 2378 (1985). In no area is deference to local regulations more complete than in the area of highway safety. *Cf. Nat'l Tank Truck Carriers, Inc. v. City of New York, supra,* 677 F.2d at 273 (*citing Raymond Motor Transp., Inc. v. Rice,* 434 U.S. 429, 443, 444 & n. 18, 98 S.Ct. 787, 795, 795 & n. 18, 54 L.Ed.2d 664 (1978)) (commerce clause analysis).

In this case, the congressional purpose was clearly to promote a uniform weight limit for trucks on federal highways of 80,000 pounds. Congress, however, chose to accomplish this purpose not by enacting a regulatory statute itself, nor by prohibiting local regulations inconsistent with an 80,000 pound federal standard. Instead, Congress imposed a penalty on states having local laws imposing stricter limits than the federal standard. Congress, then, not only contemplated the existence of local regulations, *see California Coastal Comm'n v. Granite Rock Co., supra,* 107 S.Ct. at 1426–27, but expressly contemplated the existence of inconsistent local regulations. Congress, then, intended to live with local weight regulations diverging from the 80,000 pound standard and to tolerate any resulting tension. The courts must do the same. *See Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 256, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984) (Congress intended to preserve state law damage actions arising from nuclear accidents and to tolerate any tensions arising from conflicts between these state law claims and exclusive federal regulatory control of nuclear industry). Former section 211(10) cannot be considered, for federal preemption purposes, to have been an obstacle to the accomplishment of congressional purpose.[20]

---

**20.** Furthermore, when making the inquiry for pre-emption purposes whether a local enactment creates an obstacle to the accomplishment of congressional purpose, the relationship between state and federal laws should be considered "as they are interpreted and applied, not

## CONCLUSION

For the reasons set forth above, summary judgment is granted to defendants on all claims, and plaintiffs' action is dismissed with prejudice. Because of this Court's disposition of the merits, it is unnecessary to decide plaintiffs' requests for temporary relief, for joinder of additional parties, or for class certification. The State Defendant's application for costs, disbursements, attorney's fees and sanctions is denied.

It is so ordered.

merely as they are written." *Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977). In this case, the City enforced former section 211(10) on federal highways only against trucks weighing in excess of 80,000 pounds. As interpreted and applied, then, there is no conflict at all between former section 211(10) and 23 U.S.C. § 127(a).