**Julie CHALMERS, Plaintiff-Appellant,**

**v.**

**CITY OF LOS ANGELES, Defendant-Appellee.**

**No. 82–6112.**

United States Court of Appeals, Ninth Circuit.

Reargued and Resubmitted March 13, 1985.

Decided June 4, 1985.

John B. Murdock, Santa Monica, Cal., for defendant-appellee.

Marcia Haber Kamine, Los Angeles, Cal., for plaintiff-appellant.

Before WALLACE, TANG, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

The City of Los Angeles appeals the judgment granted to Chalmers in her action brought pursuant to 42 U.S.C. § 1983 for deprivation of due process rights. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEEDINGS BELOW

Chalmers, a resident of Kansas City, decided to go into the business of selling T-shirts. Chalmers initially planned to sell King Tut T-shirts outside the King Tutankhamen Exhibit at the Los Angeles Museum of Art. After several long distance inquiries to various City authorities, who indicated that pushcart sales were permissible, Chalmers had T-shirts made for sale at the Exhibit. When Chalmers arrived in Los Angeles she received a seller's permit from the California State Board of Equalization. Chalmers also obtained a Business Tax Registration Certificate from the City's Tax and Permit Division, and a written sheet which contained standard information, including relevant City ordinances on street vending. Two of the municipal ordinances on the information sheet appeared contradictory. One ordinance, section 42.00, Los Angeles Municipal Code (L.A.M.C.) prohibited all vending activity in a broad area of the City; while the other, section 80.73 L.A.M.C., permitted a vendor to sell from a pushcart provided the vendor stopped only at the request of the purchaser and for no longer than ten minutes.

The City became aware of the conflict between the two ordinances in 1973 and again in 1975 by virtue of litigation in the California state courts. The City Attorney also was aware of the inconsistency in the City vending ordinances. He wrote letters to the Police Department advising them against enforcing the conflicting ordinances, and to the City Council urging them to clarify this area of the law. No action was taken to clarify or reconcile these inconsistent ordinances until sometime after Chalmers sought to vend T-shirts from a pushcart outside the Art Museum. Before she began her sales, Chalmers sought to clarify the meaning of these conflicting ordinances. After consultation with their supervisor, employees of the City Clerk's Office again assured her that her planned activities were permitted. Acting upon her reading of the ordinances and the advice given her, Chalmers concluded that it would be permissible to sell T-shirts if she observed the ten minute stop rule. When Chalmers attempted to sell the T-shirts, she was harassed, threatened with arrest and prosecution, and ultimately prevented from selling the T-shirts by Los Angeles police officers who contended that the sale was illegal under section 42.00 of the Los Angeles Municipal Code.

Chalmers filed an action under section 1983 alleging a deprivation of her due process rights, specifically her right to engage in a common occupation, by unreasonable and arbitrary application of vague and conflicting ordinances. The jury awarded Chalmers damages in the amount of $15,723 for lost profits and $12,500 for deprivation of due process. The City appeals from the final verdict and the denial of its motion for judgment notwithstanding the verdict and for new trial.

## ISSUES

1. Was Chalmers deprived of life, liberty, or property without due process?
2. Does the evidence support the damage award?
3. Was there prejudicial attorney misconduct?
4. Was there prejudicial error in the admission of evidence?

## DISCUSSION

### 1. Due Process.

The City argues that the evidence presented at trial does not support a claim of due process deprivation, and that its motion for judgment notwithstanding the verdict should have been granted. A judgment notwithstanding the verdict motion is reviewable *de novo*. *Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707, 709 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984). A motion for a judgment notwithstanding the verdict should not be granted unless "the evidence permits only one reasonable conclusion as to the verdict." *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir.) (*quoting Kay v. Cessna Aircraft Co.*, 548 F.2d 1370, 1372 (9th Cir.1977), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980)). "The evidence must be viewed in the light most favorable to the prevailing party and all inferences must be drawn in that party's favor." *Flores.* 617 F.2d at 1389.

The City argues that Chalmers failed to establish a deprivation of due process because she had no constitutionally protected interest in selling T-shirts from a vending cart. The City initially contends that there is a distinction of constitutional significance between "common occupations" and specific or particular ones such as vending T-shirts. The City relies on dictum in *New Motor Vehicle Board v. Orrin W. Fox Co.*, 434 U.S. 1345, 98 S.Ct. 359, 54 L.Ed.2d 439 (Rehnquist, Circuit Justice) (1977), arguing that Justice Rehnquist, in his capacity as Circuit Justice, indicated his view that there is no right to engage in a particular occupation. We think the City overstates the position taken by Justice Rehnquist. In any event, when *Fox* came before the full court, it did not reach the issue of whether the right to engage in a particular trade or business was protected by the due process clause. *See New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 99

S.Ct. 403, 58 L.Ed.2d 361 (1978). Other discussion of this issue by the Supreme Court does not support the City's view. *See, e.g., Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) ("[t]he right to hold specific private employment and to follow a chosen profession ... comes within the 'liberty' and 'property' concepts of the Fifth Amendment"); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957) ("a State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection clause of the Fourteenth Amendment").

■ The question of constitutional significance is not whether vending T-shirts is a common or particular occupation, but rather whether the pursuit is an "occupation" at all. It is beyond dispute that retail sales by an independent business person is an occupation within the meaning of *Schware* and is private employment within the meaning of *McElroy.* Chalmers' pursuit was an occupation.

■ While the City of Los Angeles may well have had authority to prohibit the activities of vendors entirely, *see New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), absent a valid regulation of such activities, Chalmers had a right protected by the due process clause to engage in this occupation. *See Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); *cf. Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("while the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest once conferred....").

Chalmers contends that the regulation of vending by the City was unreasonable because the applicable ordinances were vague and conflicting. The City argues that the ordinances were not conflicting because section 42.00—the prohibition against street sales—impliedly repealed section 80.-73—the ten-minute rule. Precedence is argued on the basis of the date of the last amendment.

Section 42.00 does not mention repeal, or even refer to section 80.73. It is arguable that section 42.00 impliedly repealed section 80.73, although repeals by implication are not favored, *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981); *Guam v. Quinata,* 704 F.2d 1085, 1087 (9th Cir.1983). The issue in this case is not which statute was in effect at the time Chalmers attempted to sell T-shirts. The issue is whether the statutes provided the notice required for due process. We hold that they did not.

■ Government regulation must be sufficiently clear so that ordinary people can understand what conduct is being prohibited, *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), and so that the regulation "does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Although "economic regulation is subject to a less strict vagueness test" than criminal laws, *Village of Hoffman Estates v. The Flip Side, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (*Hoffman*); *see Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. at 1859 n. 8, vagueness analysis still applies to such regulation. Two justifications are provided for a less strict test in these circumstances: "[B]ecause its subject matter is often more narrow, and because businesses ... can be expected to consult relevant legislation in advance of action." *Hoffman,* 455 U.S. at 498, 102 S.Ct. at 1193 (footnotes omitted). The Court also observed that "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* Moreover, "greater tolerance" is permitted with legislation imposing only "civil rather than criminal penalties." *Id.* at 498–99, 102 S.Ct. at 1193. "[T]he principal inquiry is whether the law

affords fair warning of what is proscribed." *Id.* at 503, 102 S.Ct. at 1195.

■ In the circumstances of this case, the City's ordinances failed to pass muster under *Hoffman's* analysis. Rather than covering a narrow subject, one ordinance sought to proscribe all vending activity in a broad city area. Chalmers was given copies of this and another ordinance which were facially contradictory. Evidence at trial indicated that the City Attorney was not certain of the ordinances' meanings. Finally, a California Superior Court dealt with the apparent conflict between sections 42.00 and 80.73 and found these sections to be unconstitutionally vague. *Ala Carte Catering, Inc. v. Davis,* No. C 140,742 (Cal. Sup.Ct.L.A. Dec. 25, 1975) (memorandum of decision). Given the obvious ambiguity in these ordinances, Chalmers sought both to consult relevant legislation in advance of her action and to clarify the meaning of the regulation by resort to City officials. Contrary to the reassurances and advice given to her by City employees, Chalmers was harassed and threatened with arrest. The plaintiff did all she could reasonably be expected to do in determining the City's requirements before engaging in her occupation, even to the point of requesting clarification of the conflicting and vague ordinances.

■ We do not hold that the ordinance scheme itself was necessarily a violation of due process. Rather, the due process violation occurred in the manner in which this inconsistent scheme was implemented and enforced. Although a city is not liable on a theory of *respondeat superior* for the individual constitutional torts of its employees, it may be held to compensate for action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by its officials. *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The question is whether some official policy is "the moving force of the constitutional violation." *Id.* at 694, 98 S.Ct. at 2038. In particular, a municipality is liable for

" 'systemic' injuries that result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith." *Owen v. City of Independence,* 445 U.S. 622, 652, 100 S.Ct. 1398, 1416, 63 L.Ed.2d 673 (1980). Indeed, knowledge that the official policy was constitutionally infirm may not be necessary to establish liability, although here the City had such knowledge, because "even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting financial loss" to the government and its taxpayers. *Id.* at 655, 100 S.Ct. at 1417. The imposition of section 1983 liability in these circumstances can provide "an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Id.* at 652, 100 S.Ct. at 1416. "Furthermore, the threat that damages might be levied against the City may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights." *Id.*

■ Here, the genesis of Chalmers' problems rest with the lawmakers' creation of conflicting and inherently unclear ordinances. The City Council recognized the problem and the need to resolve the inconsistency, as did the City Attorney in his letters to the Police Department and the City Council. Nevertheless, the Council did not act until after Chalmers had been harassed by police enforcement of one of the conflicting ordinances. During this same time, the City Tax and Permit Division continued to distribute to street vendors a standard information page which reproduced the ordinances in consecutive order without any explanation of the obvious inconsistency. When Chalmers inquired about the inconsistency, the collective response of the office was that she could sell under the ten-minute pushcart ordinance. In the wake of the lack of regulatory consistency and the issuance of appropriate

permits to Chalmers to sell T-shirts, the police adhered to a policy of prohibitive enforcement to the point of harassment.[1]

The challenged ordinances in this case were clearly the "moving force" behind Chalmers' injuries. Absent the ordinances, the Police Department would not have adopted its enforcement policy. *See Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981); *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.1978).

This system-wide lack of coordination could not have been prevented by Chalmers. She did everything possible to obtain clarification of the vending laws. The City failed to support a uniform interpretation of the facially inconsistent ordinances despite an obvious need to "take further steps to minimize the dangers of arbitrary enforcement."[2] *Hoffman*, 455 U.S. at 504, 102 S.Ct. at 1196. The City's inaction combined with "foreseeable" affirmative action (i.e., one branch of city government advising Chalmers that an ordinance permitting vending controlled while another branch of city government, the Police Department, enforced a conflicting ordinance prohibiting street vending), led to the deprivation of Chalmers' constitutionally protected liberty interest in conducting her sales efforts.

We need not address the scope of any duty a legislative body may have to avoid inconsistencies in its legislation as an abstract proposition, as the facts of this case are relatively narrow. And we need not determine whether the mere existence of inconsistent legislation, absent any effort aimed at enforcement, constitutes a violation of due process. Finally, we need not determine whether a city may be held liable for this type of a constitutional violation absent the kind of knowledge that the City

had in this case. Even under a limited review of economic legislation, because of its inconsistent ordinances Los Angeles failed to prohibit validly Chalmers' vending activities. Indeed, the City's own officials were uncertain as to what was proscribed. At the same time, the City had been aware of the inconsistencies for some five years, after having two separate injunctions issued against their enforcement by state courts. It nevertheless failed to take any corrective action. Despite the clear awareness of the ordinances' infirmities, the Police Department undertook enforcement activities against Chalmers, who had been told by another City employee that her activities were permitted. As a result, Chalmers suffered actual injury to her protected liberty interest. On these facts, the City of Los Angeles should not be surprised at a finding of liability for violating Chalmers' rights to due process.

The City finally argues that Chalmers failed to state a due process claim because state remedies existed which provided due process. The City relies on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that where a state official negligently deprived someone of property, and where a pre-deprivation hearing is not practical, state law provisions for a post-deprivation hearing can be sufficient to meet minimum due process requirements.

In *Parratt*, the Court concluded that the plaintiff did not allege a due process violation, stressing that "[a]lthough he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, [it] occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Id.*

**1.** The police followed Chalmers, charged her with illegal advertising, removed her advertising signs, threatened her with arrest for distributing flyers, and in short engaged in a continual process of intimidation.

**2.** The City argues that its actions would have been valid regardless of the ordinances challenged here under Cal.Penal Code § 370 (West 1970), which proscribes public nuisances. The

jury was instructed on this justification as requested by the City. The jury's finding against the City indicates that the City failed to meet its burden of establishing this defense, *see Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). We see no basis in the record to disturb that finding.

at 543, 101 S.Ct. at 1917. *Parratt* is inapposite. Instead, we are governed by the Supreme Court decision in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). There, as in the present case, the plaintiff was deprived of due process by operation of law. The *Logan* Court distinguished *Parratt* and held that Logan had indeed stated a due process deprivation claim:

> In *Parratt,* the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law....

*Id.* at 435–36, 102 S.Ct. at 1158 (citations omitted).

As the preceding discussion demonstrates, Chalmers, like Logan, is challenging not an "unauthorized act," but a systematic procedural deficiency depriving her of due process. She has stated precisely the type of claim which section 1983 is designed to remedy.

That plaintiff in *Logan* challenged a state statute and Chalmers here complains of a municipal ordinance has no effect on our analysis. Because a city is merely a political subdivision of the state from which its authority originates, "what would be unconstitutional if done directly by the State can no more readily be accomplished by a city deriving its authority from the State." *United Building & Construction Trades Council v. Mayor & Council of Camden,* 465 U.S. 208, ——, 104 S.Ct. 1020, 1026, 79 L.Ed.2d 249, 256 (1984).

**2. Damages.**

■ The City argues that the damages award is contrary to the weight of the evidence. We will not disturb an award of damages on appeal unless it is clearly unsupported by the evidence. *Flores,* 617 F.2d at 1392. An otherwise supportable verdict must be affirmed unless it is "grossly excessive" or "monstrous" or "shocking to the conscience." *Fountila v. Carter,* 571 F.2d 487, 492 (9th Cir.1978) (citations omitted).

The City contends that the jury's award of $15,723 for lost profits is excessive. Chalmers argued that she would have had a gross profit of $21,700 and a net profit of $11,401. The City concluded that Chalmers' gross profit at best could have been $9,675 and her net profit $4,913. Each side presented evidence to support its damage calculation. The jury could reasonably have found plaintiff's figures to be more persuasive.

It is not clear whether gross or net profits are the proper measure of recovery in a section 1983 suit. The City argues that net profits are the proper measure of recovery. It relies on *Distillers Distributing Corp. v. J.C. Millett Co.,* 310 F.2d 162, 164 (9th Cir.1962), which applied California law in a breach of contract action. Even if *Millett* were applicable, it does not support the City. The court there noted that gross profits could be used as a substitute for net profits where operating expenses were fixed, as Chalmers' were. *Id.*

■ The purpose of awarding damages in a section 1983 action is to compensate the aggrieved party. *See Carey v. Piphus,* 435 U.S. 247, 254–55, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). In the present case we believe the jury could reasonably find that net profits would not provide full compensation to the plaintiff. The initial cost of $7,572 was needed to begin Chalmers' business. That amount had already been spent when she came to Los Angeles. It could not be recaptured when she was prevented from selling her T-shirts. For Chalmers to be compensated fully, she must recover her initial cost as well as her net profit. Accepting Chalmers' figures as true, she would have earned a net total of $11,401. When her initial costs of $7,572 were added to her net profits, a "reasonable" award figure of $18,973 is reached. In light of this figure, the jury's verdict of $15,723 was not excessive. We will not disturb the award.

The City also contends that it was error to award damages for deprivation of due process, claiming that injuries suffered because of procedural deficiencies are not compensable under section 1983. In support, it cites *Carey, id. Carey* holds just the opposite. Where there is a deprivation that is substantively justified but departs from procedural due process, it is only the harm produced by the procedural defects that is compensable. *Id.* at 263, 98 S.Ct. at 1052. In the instant case, contradiction between the ordinances and the subsequent inconsistency between the actions of the City's licensing authorities and the enforcement officers constitute the violation of due process, and are an unjustified procedural irregularity. Chalmers' injuries were caused by the unjustified deprivation. There is no bar to compensation.

The City also argues that Chalmers did not establish proof of compensable psychological harm. Chalmers testified at trial to the anguish, embarrassment, anxiety, and humiliation which she suffered. The jury apparently believed her testimony. The City does not object to the instructions given to the jury on this issue. The jury award of $12,500 is not "monstrous." We reject the City's argument.

### 3. Attorney Misconduct.

The City contends that the district court should have granted a new trial because of attorney misconduct. We review the denial of a motion for a new trial only for abuse of discretion. *McKinley v. City of Eloy*, 705 F.2d 1110, 1117 (9th Cir.1983). The trial judge should deny a motion for a new trial unless there was a prejudicial defect in the proceedings. Fed.R.Civ.P. 61.

The City argues that Chalmers' attempt to introduce inadmissible evidence mandates a new trial. There has been no showing that exposure to inadmissible evidence, if it occurred, affected the outcome of this case. Without evidence of prejudice we will not grant a new trial.

The City contends that Chalmers' counsel made prejudicial personal attacks on the City's attorneys. Again, the City has not shown that these "attacks" affect-ed the verdict. Without such evidence we cannot find that the district court abused its discretion in denying a new trial on these grounds.

Finally, the City claims that in discussing the deterrent effects of damages under section 1983, plaintiff's counsel was effectively requesting an award of punitive damages. A municipality may not be held liable for punitive damages under section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981). Deterrence, however, is an acknowledged goal of that section, *id.*, and an argument which emphasizes deterrence is not necessarily equivalent to an argument for punitive damages. Moreover, after the City's objection to the issue at trial, Chalmers' counsel explicitly outlined the compensatory nature of the requested damages.

The City has not established an abuse of discretion by the trial court in denying a new trial motion on the ground of attorney misconduct.

### 4. Admissibility of Evidence.

In support of its motion for a new trial, the City alleges various errors in the admission of evidence. To grant a new trial on improperly admitted evidence, the admission must have constituted prejudicial error. Fed.R.Civ.P. 61. The trial court's denial of a new trial motion on these grounds is reviewed for an abuse of discretion. *United States v. Patterson*, 678 F.2d 774, 778 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).

First, the City alleges that it was error to allow appellee to read her testimony from a prepared text. The City's objection was overruled at trial. Chalmers responds that she was merely using notes to refresh her memory. Written aids may be used to stimulate a recollection, but such writings must be made available for inspection and cross-examination by the adverse party. Fed.R.Evid. 612. In this case, the notes were made available to the City and used in cross-examination.

Second, the City alleges that certain admitted letters concerning the confusion be-

tween the ordinances were irrelevant. We find the City's argument unpersuasive. The letters were offered to show the City's knowledge that the ordinances were contradictory.

The City also argues that the preliminary injunctions and memorandum of decision in *Ala Carte Catering* concerning the same ordinances are inadmissible as evidence. The case it cites in support of its position, *Guam Investment Co. v. Central Building, Inc.*, 288 F.2d 19 (9th Cir.1961), had nothing to do with the admissibility of evidence. The injunction and memorandum, like the letters discussed above, were offered as evidence of the City's knowledge that the ordinances were vague and conflicting. Such knowledge is relevant to the resolution of the issues in this case.

The City does not establish that admission of the disputed evidence constituted prejudicial error. The arguments concerning admissibility of evidence do not provide grounds for a new trial.

**AFFIRMED.**