5 F.3d 543
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellant,
v.
REAL PROPERTY, LOCATED AT 4202 LIONHEAD AVENUE, RIVERSIDE,
CALIFORNIA, Defendant,
Vicente Haro Guadarrama; Alicia Rojas; Gerardo Guadarrama,
Claimants-Appellees.
 No. 92-55454.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1993.
Decided Sept. 15, 1993.
 
 Appeal from the United States District Court, for the Central District of California, D.C. No. CV-90-3947-WJR; William J. Rea, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before: NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In August 1989, the Riverside, California, police arrested Enrique Rojas at a house at 4202 Lionhead Avenue for possession of cocaine, methamphetamine, and heroin. He was subsequently convicted of possession of controlled substances for sale. After his arrest, the government seized the house and commenced a forfeiture action against the property. Alicia Harrell, Rojas' daughter, Vicente Haro Guadarrama, Alicia's live-in boyfriend, and Gerardo Guadarrama, Vicente's brother, (collectively "claimants") filed claims contending that they owned the property.
 
 
 3
 Prior to trial, the government deposed Rojas. At his deposition, he admitted that he had been involved in the sale of drugs since at least 1987. Then, on the advice of claimants' counsel, Rojas invoked his Fifth Amendment right against self-incrimination.
 
 
 4
 At trial, Rojas testified for the claimants. When the government attempted to cross-examine him about his prior history of selling drugs, he again invoked the Fifth Amendment. The court denied the government's motion to admit Rojas' deposition testimony.
 
 
 5
 The jury returned verdicts in favor of the claimants. The government then moved for a new trial, urging that claimants' counsel made improper statements in his closing argument. The district court denied the motion. This timely appeal followed.
 
 
 6
 * We review the trial court's denial of a new trial motion based on evidentiary error or on misconduct for an abuse of discretion. Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir.1985). To grant a new trial on the basis of an evidentiary ruling, the error must have been prejudicial. Id. (citing Fed.R.Civ.P. 61). Counsel's misconduct warrants a new trial only if the misconduct affected the verdict. Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir.1990).
 
 II
 
 7
 At trial, on direct examination by claimants' counsel, Rojas admitted that he had been convicted of possession stemming from his August 1989 arrest at the Lionhead Avenue property. On cross-examination, the government asked Rojas whether he had sold drugs prior to his arrest. In response to that question, Rojas invoked the Fifth Amendment. The government then moved to read his deposition testimony into the record. The court sustained the claimants' objection to the admission of the deposition testimony, concluding that, "I don't think you should read from the deposition, ... because it to me appears overall to be improper for you to do that.... I think that if for no other reason [Fed.R.Evid.] 403 comes into play here." The government contends that the district court abused its discretion by excluding Rojas' deposition testimony.
 
 
 8
 We need not determine whether the district court erred in excluding this evidence for we are not persuaded that any resulting error was harmful. At his deposition, before invoking his Fifth Amendment privilege,[1] Rojas testified that he was not sure how much cocaine he had purchased for resale because
 
 
 9
 it wasn't like every day. It was like $10, $20. $50 was the very most. It was like three and a half grams, and it was like $150. But that was like every month or every two months.
 
 
 10
 He testified that when he would buy cocaine for fifty dollars a gram, he would sell it for sixty or seventy dollars. Similarly, he testified that he bought marijuana in twenty-five dollar amounts on two or three occasions and that he bought heroin two or three times. These admissions represent the entirety of Rojas' admissions at his deposition.
 
 
 11
 At oral argument before this court, the government conceded that this testimony would have done little to bolster its argument that proceeds from Rojas' drug sales were used to purchase the Lionhead Avenue property. The government argues, however, that this evidence was crucial to its contention that the claimants knew that Rojas was using the property to facilitate his drug trade. We are not convinced that the government has demonstrated prejudice. The jury had before it Rojas' arrest at the Lionhead Avenue property and his conviction for possession of drugs for sale. Moreover, the district court allowed the government to draw a negative inference from Rojas' silence. In its closing argument, the government took full advantage of that opportunity, arguing strenously that Rojas was "a long-time well-established drug dealer"; that he was involved in sale of large amounts of drugs; that the police had arrested him at the property "with a lot of drugs on hand"; and that he was making a lot of money dealing drugs. Further, the government had every opportunity to present other evidence that Rojas' drug activity at the Lionhead Avenue property was frequent and open but failed to do so. Under these circumstances, the government has not persuaded us that exclusion of the above-quoted deposition testimony affected the verdict.
 
 III
 
 12
 The government next contends that claimants' counsel committed misconduct in his closing argument. At the end of counsel's argument, the government objected to counsel's assertion that it was factually untrue that Rojas had ever sold drugs, asking the court for a limited instruction to the effect that Rojas had admitted to prior sales of drugs. The court refused, indicating that the government's objection was not timely because it was not contemporaneous with counsel's statements. Subsequently, in denying the government's motion for a new trial, the court offered two additional reasons for overruling the government's objection. The court stated that claimants' closing argument was not improper, but rather an example of the "invited response doctrine," citing United States v. Young, 470 U.S. 1, 14 (1985). And the court concluded that "even if claimant's [sic] closing argument could be construed as improper, the argument did not affect the verdict.
 
 
 13
 * The district court indicated that the government's objection to counsel's argument was untimely because, rather than interrupting him, the government waited until he had finished and then asked for a side bar. At the side bar, the government objected and asked for a curative instruction. The Supreme Court appears to have endorsed just such a response to perceived misconduct in closing argument. See Young, 470 U.S. at 13; accord United States v. Dennis, 786 F.2d 1029, 1047 n. 19 (11th Cir.1986), cert. denied, 481 U.S. 1037 (1987); United States v. Dorr, 636 F.2d 117, 120 (5th Cir.1981); Lange v. Schultz, 627 F.2d 122, 127 (8th Cir.1980). Because we conclude that counsel did not commit prejudicial misconduct, we will assume that the government's objection was timely.
 
 B
 
 14
 As noted above, in its closing argument, the government argued that Rojas was "a long-time well-established drug dealer"; that he was involved in sale of large amounts of drugs and the police had arrested him at the property "with a lot of drugs on hand"; and that he was making a lot of money dealing drugs. In his rebuttal argument, claimants' counsel challenged the government's assertions, pointing out that the government presented no direct evidence that Rojas ever sold large quantities of drugs or derived a substantial income from drug sales. It was well within the bounds of zealous advocacy for claimants' counsel to have pointed out this lack of evidence. The government contends, however, that counsel crossed the line by suggesting that it was factually untrue that Rojas had ever sold drugs.
 
 
 15
 Viewed in isolation, several of counsel's statements are troubling. Counsel should not have stated that Rojas had never sold drugs when counsel knew the opposite was true. Likewise, counsel should have refrained from suggesting that there was no evidence that Rojas was a long time drug dealer when he knew that the government had procured and proffered just such evidence. See Joseph v. Brierton, 739 F.2d 1244, 1247 (7th Cir.1984); Harbin v. Interlake Steamship Co., 570 F.2d 99, 105-06 (6th Cir.1978). Yet, viewed in the context of counsel's entire argument, the comments objected to by the government can be fairly seen as an effort to emphasize the weakness of the government's case. Clearly, the overall theme of counsel's closing argument was the lack of evidence in the record. In any event, we join the district court in concluding that counsel's argument did not affect the verdict. We are not convinced that counsel's statements permeated the entire proceeding so that the jury was influenced by passion and prejudice in reaching its verdict. See Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1287 (9th Cir.1984).
 
 IV
 
 16
 In short, the government has failed to persuade us that the exclusion of Rojas' deposition testimony or counsel's closing argument, standing alone or in combination, constitutes prejudicial error. The district court did not abuse its discretion in denying the government's motion for a new trial.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rojas asserted his Fifth Amendment privilege on the advice of claimants' counsel. Counsel maintains that in addition to representing the claimants, he represented Rojas for the limited purpose of the deposition. As counsel himself recognizes, his decision to "wear two hats" was highly dubious. Other courts have noted the potential for abuse that such a decision creates. See, e.g., United States v. Mayes, 512 F.2d 637, 650-51 (6th Cir.1975)