21 F.3d 1111
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Henry BRADFORD, Plaintiff-Appellee,
v.
CITY OF LOS ANGELES; Michael Sirk, Defendants-Appellants.
 Nos. 92-56173, 93-55051.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1993.
Decided April 4, 1994.
 
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. INTRODUCTION
 
 2
 Los Angeles Police Department ("LAPD") Detective Michael Sirk, appeals the jury's verdict in favor of Henry Bradford in his action under 42 U.S.C. Sec. 1983. Detective Sirk also appeals the district court's award of $88,518.36 in fees and costs under 42 U.S.C. Sec. 1988. Detective Sirk contends: (1) there was insufficient evidence to support the verdict, (2) the trial court should not have permitted Mr. Bradford to assert the Fifth Amendment and avoid cross-examination, (3) the jury improperly considered Mr. Bradford's testimony despite the court's admonishment, (4) the damages award of $850,000.00 was excessive, (5) there was insufficient evidence to support the award of $40,000 in punitive damages, and (6) the attorney's fee award was excessive. Finding no merit in any of these claims, we affirm.
 
 II. BACKGROUND
 
 3
 On March 14, 1989, appellant, Michael Sirk, a Detective with the Los Angeles Police Department ("LAPD"), took part in a police operation designed to foil a kidnap and ransom attempt. As part of the operation, the police worked with the victim's family to arrange a fake ransom drop at an intersection in South Central Los Angeles. Detective Sirk was one of the officers assigned to stake out the drop spot and to arrest any suspects who attempted to pick up the ransom. Other officers were stationed around the perimeter of the drop spot to cut off any attempted escape by those who picked up the ransom packages.
 
 
 4
 One of the officers, the "point officer," saw the respondent, Henry Bradford, drive with some other people to the ransom spot. Mr. Bradford left the car and ran to pick up one of the two ransom packages. The point officer radioed this information to the others. As Mr. Bradford made his way back to the car, the point officer walked out of his hiding place and ordered Mr. Bradford to freeze. Mr. Bradford continued running, threw the ransom package into the car, and began to run down the street away from the car and away from the point officer.
 
 
 5
 When Detective Sirk heard the point officer's broadcast he was in his unmarked police car with the engine running, about 40 feet away and around the corner from the point officer. He turned the corner onto the street where Bradford was running and pulled up behind him. Detective Sirk's partner pulled his gun on Bradford, and yelled for him to halt. When he failed to do so, Detective Sirk deliberately drove the police car into Bradford. The car hit him from behind, knocking him up onto the hood and rolling him onto the ground when the car stopped.[1]
 
 
 6
 The parties dispute what happened next. In Detective Sirk's version of events, Bradford got back on his feet and again attempted to run away. Then Detective Sirk, who had stopped the car after hitting Bradford, pulled onto the curb in an attempt to cut in front of him. Instead, he hit Bradford a second time, denting the car and knocking him to the ground. Detective Sirk testified, "I believe he struck the car more than the car struck him." Somehow, in the second impact, Bradford was thrown backward and his right ankle fell under the right car wheel.
 
 
 7
 By contrast, in Mr. Bradford's version, he never returned to his feet after falling off the police car. Rather, he landed with his left leg tucked under his body and his right leg extended flat against the ground, and was trying to push himself up with his hands when Sirk needlessly aimed the police car in his direction and ran over his right ankle.
 
 
 8
 By either account, the car caused a severely comminuted fracture of the distal tibia and fibula, that is, it fractured and fragmented his right shin bone and the small bone just above his right ankle. In addition to the immediate pain caused by the injury, Mr. Bradford was forced to undergo surgery, and has never regained full use of his leg. Although he can now walk, perhaps without the aid of a cane, he cannot run, and continues to experience swelling and pain from continuous activity.
 
 
 9
 After hitting Bradford with his car the second time, Detective Sirk left the car, and he and two other officers arrested Bradford. A civilian eyewitness thought that the officers handled Mr. Bradford roughly, and heard one of the officers, possibly Sirk, say to Bradford, "Hey, nigger, where is the lady and the kid...." 7/24/91 RT at 10.
 
 
 10
 Bradford testified on the third day of the trial. On direct examination he testified that he had just left the car and was walking when he was hit by the police car. The car knocked him down, and then drove over his ankle. After that, he could not move his leg so he slid over to get out of the way of the car, which was once again moving in his direction, and which did not stop until he was pinned to the fence. The police got out of the car and one of them held a gun to his temple and insulted him while another one sat on him and punched him until he blacked out. Bradford also testified about his treatment once taken into police custody, about the nature and extent of his injuries, and about his work history.
 
 
 11
 Mr. Bradford was cross-examined about all of the above, including his version of the sequence of events leading up to his injury. But he invoked the Fifth Amendment and refused to answer any questions about the ransom box or about what he said to the other occupants of the car. On Detective Sirk's motion, the trial judge instructed the jury to disregard all of Mr. Bradford's testimony other than that regarding the injuries he received or the consequences of those injuries. The district court denied Detective Sirk's motions for a directed verdict, and after the jury returned its verdict the court denied Sirk's motion for a new trial.
 
 III. DISCUSSION
 
 12
 A. Liability.
 
 
 13
 Detective Sirk contends that it was error for the trial judge to deny his Rule 50 motion for a directed verdict because Bradford presented insufficient evidence for a jury to find Sirk liable. We use the same standards as the district court to determine if a directed verdict was appropriate. The Jeanery v. James Jeans, 849 F.2d 1148, 1151 (9th Cir.1988). We therefore review the evidence, considered in the light most favorable to the non-moving party, to determine if there was substantial evidence to support a jury verdict in favor of that party. George v. City of Long Beach, 973 F.2d 706, 710 (9th Cir.1992), cert. denied, 113 S.Ct. 1269 (1993).
 
 
 14
 Here we must determine if there was substantial evidence to support a determination that Detective Sirk used unreasonable force to make the arrest. See Graham v. Connor, 490 U.S. 386, 395 (1989) (all claims that law officers used excessive force in the course of arrest should be analyzed under the Fourth Amendment reasonableness standard). In this inquiry, we judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene. Id. at 396. The use of deadly force by an officer is reasonable only if (1) the suspect threatens the officer with a weapon, or there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, and (2) the deadly force is necessary to prevent escape. Tennessee v. Garner, 471 U.S. 1, 11 (1985).
 
 
 15
 Detective Sirk concedes that there was substantial evidence that he used deadly force against Mr. Bradford. See U.S. v. Sanchez, 914 F.2d 1355, 1363 (9th Cir.1990) (use of a vehicle to run over a person may constitute deadly force), cert. denied, 499 U.S. 978 (1991). It is also undisputed that Detective Sirk had probable cause to believe that Bradford was committing a crime involving the threatened infliction of serious bodily harm. Therefore, the only question for the jury was whether the amount of force used by Sirk was necessary to prevent Bradford's escape. More particularly, we must determine whether there was substantial evidence to support a finding that a reasonable officer in Detective Sirk's position would not have found it necessary to use his car as he did to prevent Mr. Bradford from escaping.
 
 
 16
 We conclude that there was substantial evidence to support such a finding, viewing the evidence in the light most favorable to Bradford. Specifically, the jury could conclude that Detective Sirk's use of a car as a weapon was unnecessary because Sirk had more reasonable alternatives
 
 
 17
 Detective Sirk admitted that he deliberately drove his car into Bradford's body to stop Bradford's progress. Mr. Bradford presented evidence at trial that this action was unnecessary because Sirk could have relied on the other police who were stationed around the perimeter of the drop site, and because he could have stopped Bradford's forward progress by driving past him rather than into him.
 
 
 18
 Detective Sirk argues that this availability of alternative measures "is irrelevant" because the correct inquiry is whether the officers acted reasonably. Blue Brief at 28 (citing Scott v. Henrich, 978 F.2d 481, 484 (9th Cir.1992), withdrawn 994 F.2d 1343 (9th Cir.1993)). This misstates the law. The availability of less adventurous alternatives is obviously relevant to the factfinder's ultimate determination of the reasonableness of the officer's actions. See Garner at 11 (deadly force is only reasonable if necessary to prevent escape). Where as here, the plaintiff presents substantial evidence that less intrusive means were available, it is up to the jury to determine if those means were reasonable.
 
 
 19
 Detective Sirk admitted that he knew that all of the likely avenues of escape were sealed off by other officers, and that it was to be expected that the kidnap suspects would try to flee once they were confronted by the authorities. He knew that Mr. Bradford was traveling on foot, and could have observed that his hands were empty. By driving up ahead of Mr. Bradford, Detective Sirk could have narrowed the already minimal avenues of escape. A reasonable jury could conclude from this evidence that Detective Sirk's unorthodox actions were objectively unnecessary to prevent Bradford from escaping.
 
 
 20
 B. Fifth Amendment.
 
 
 21
 Detective Sirk contends that the district court erred in denying its motion for a new trial because Mr. Bradford was improperly allowed to invoke his Fifth Amendment privilege against self-incrimination during cross-examination. We review the district court's denial of a new trial for abuse of discretion. Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989).
 
 
 22
 The parties dispute whether Mr. Bradford was entitled to invoke the Fifth Amendment, whether the district court's instruction to disregard his testimony was adequate to prevent any prejudice, and whether Detective Sirk waived any right to a new trial by waiting until after the jury's verdict to object to the district court's remedy. We need not address the first two issues because we agree with the district court that Detective Sirk waived his right to a new trial by assenting to the district court's remedy until after the verdict was in.
 
 
 23
 Rule 46 of the Federal Rules of Civil Procedure ("FRCP") requires any objection, or any proposal for action by the court, to be made "at the time the ruling or order of the court is made or sought."[2] It follows that, "in a civil action, '[a] principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.' " United States v. Walton, 909 F.2d 915, 924 (6th Cir.1990) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2805, at 39 (1973)). See also Nisshow-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 618 (5th Cir.1988) (reversing district court's grant of a new trial because issue was not raised during the trial).
 
 
 24
 (1) Failure to object during trial:
 
 
 25
 During the trial Detective Sirk objected to the district court's decision to allow Mr. Bradford to invoke during cross-examination his fifth amendment right against self-incrimination. Sirk asserted that Mr. Bradford had waived his Fifth Amendment right against self-incrimination by voluntarily taking the witness stand. To remedy this situation, Sirk's counsel moved to strike the remainder of Bradford's testimony, and he moved for a directed verdict on the ground that Bradford had no case in the absence of his own testimony.
 
 
 26
 The court properly denied the motion for a directed verdict, as discussed supra, but it granted Sirk's motion to strike Bradford's testimony, except as it related to damages. Detective Sirk did not object to this remedy, which he had suggested, nor did he move for a mistrial, either at that time or at any time before the verdict. "If the defendants believed that the testimony of plaintiff's expert would undermine the prophylactic effect of the Court's instructions to the jury to disregard Bradford's testimony, defendants should have moved for a mistrial then, not [after the verdict]." Order re: Defendants' Motion for a new Trial, at 7. According to Detective Sirk, he did not do so because he "failed to appreciate that [this remedy] ... would prove insufficient to cure the error." Blue brief at 38. Presumably he was not convinced of this until he discovered he had lost the case. This is exactly the kind of sand-bagging that the rule requiring timely objections is designed to cure.
 
 
 27
 (2) Gross injustice:
 
 
 28
 No gross injustice resulted from the district court's decision to allow Mr. Bradford to invoke the Fifth Amendment and to instruct the jury to disregard his testimony. Mr. Bradford was willing to, and did, face cross-examination about his version of the collision. In fact, he answered questions and withstood cross-examination on all aspects the events surrounding his injury except whether he went to pick up the ransom box and what he said to the other occupants of the car that he drove to the drop site.
 
 
 29
 Even on these issues, Detective Sirk suffered little, if any, prejudice from Bradford's silence. Detective Sirk was free to impeach Bradford's credibility on any issue. He was free to read his contrary deposition testimony into the record and to call the jury's attention to Mr. Bradford's refusals to answer questions. Moreover, Bradford's counsel conceded to the jury that it could "assume ... [that] he ran across he street, grabbed the package, ran back, threw it in the passenger side and started running down the street or actually probably on the sidewalk." 8/13/01 ER at 20. Finally, the court instructed the jury that Detective Sirk had probable cause to detain Mr. Bradford for a possible kidnapping violation.
 
 
 30
 Because Detective Sirk did not timely object to the district court's remedy, and because no gross injustice resulted, the district court did not abuse its discretion in denying the motion for a new trial based on the Fifth Amendment testimony.
 
 
 31
 C. Jury misconduct.
 
 
 32
 Detective Sirk also claims that the district court erred in denying his motion for a new trial based on jury misconduct. We review the decision not to grant a new trial based on juror misconduct for abuse of discretion. Hard v. Burlington Northern Railroad, 870 F.2d 1454, 1461-62 (9th Cir.1989) ("Hard II"). To support his motion, Detective Sirk submitted affidavits from several of the jurors alleging: (1) that the jury considered Mr. Bradford's stricken testimony despite the judge's instruction not to; (2) that the jurors speculated about the reason Bradford invoked the Fifth Amendment; (3) that they made use of the scientific knowledge of some of the jurors; and (4) that they adjusted the damages award to take into account their own estimate of the proportion of the award that would go for attorney's fees. We agree with the district court's well reasoned decision not to consider these affidavits in determining the merits of Detective Sirk's motion.
 
 
 33
 Rule 606(b) of the Federal Rules of Evidence ("FRE") provides that a juror may not testify or provide an affidavit for the court's consideration
 
 
 34
 as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.
 
 
 35
 FRE 606(b) (emphasis added).
 
 
 36
 Sirk contends that the jury's speculation about attorney's fees and its consideration of Bradford's stricken testimony are "extraneous prejudicial information" that may be admitted to show jury misconduct under the exception in Rule 606(b). We have recently held that speculation about attorney's fees is not the sort of information that falls within this exception. Morgan v. Woessner, 997 F.2d 1244, 1261 (9th Cir.1993), cert. dismissed, 114 S.Ct. 671 (1994).[3] As to the jury's alleged consideration of stricken testimony, Detective Sirk cites no case, nor could he, that has found such consideration to constitute "extraneous" information.
 
 
 37
 We have held that Rule 606(b) makes testimony about the existence of any extraneous prejudicial information admissible to prove juror misconduct. Hard, 870 F.2d at 1461. But testimony about how such information affected the deliberative process is not admissible. Id. Whenever a judge instructs a jury to disregard testimony, the existence of that testimony is self-evident, since all of the jurors will have been present when the testimony was given. Therefore, the only use that affidavits could serve would be to demonstrate that this information affected the deliberative process. This is precisely what is protected by rule 606(b).
 
 
 38
 D. The amount of compensatory damages.
 
 
 39
 Detective Sirk claims he should have been granted a new trial on the ground that the compensatory damages award of $850,000 was excessive. "The purpose of awarding damages in a section 1983 action is to compensate the aggrieved party." Chalmers v. City of Los Angeles, 762 F.2d 753 (9th Cir.1985). The trial court's obligation was to uphold the jury award unless the amount was clearly unsupported by the evidence and was grossly excessive, monstrous, or shocking to the conscience. Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1501 (9th Cir.1986).
 
 
 40
 Here the damages award was supported by Mr. Bradford's testimony and that of Doctor Shlens.[4] Each testified that the injury was severe, and that it continued to have a serious impact on Bradford's mobility. Bradford stated that he could not stand up longer than 20 minutes at a time without experiencing pain and swelling. The injury prevented him from lifting weights and riding his bicycle, activities he previously had engaged in several times a week. He also testified that because of the injury he was precluded from doing the work for which he had prior experience. Bradford was a licensed cosmetologist, and had also worked loading rigs for a metal company, doing maintenance, and doing clerical work.
 
 
 41
 Detective Sirk contends that the jury improperly included lost earnings in the damage award. First, it is not clear how much, if any, of the award was intended to cover lost earnings. Detective Sirk asserts that lost earnings were included because Mr. Bradford's attorney argued to the jury that it could award lost earnings, and because the jury wrote "includes everything" next to the amount of the award on its special verdict form. We are not permitted to speculate on the meaning of these cryptic words. See Tanno v. S.S. President Madison Ves, 830 F.2d 991 (9th Cir.1987) (information volunteered by jury in the margin of its special interrogatory form equivalent to the jurors testifying as witnesses about their verdict, and therefore must be excluded under FRE 606(b)). In any case, we find nothing wrong with including some money for lost earnings in the award. The jury was entitled to credit Mr. Bradford's uncontroverted testimony that he lost some work income as a result of the injury.
 
 E. Punitive Damages:
 
 42
 Punitive damages are appropriate in a section 1983 action " 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 707 (9th Cir.1989) (quoting Smith v. Wade, 461 U.S. 30, 56 (1971)). The standard for section 1983 liability "largely overlaps" this standard for punitive damages. Larez v. City of Los Angeles, 946 F.2d 630, 649 (9th Cir.1991). The difference is that compensatory damages are mandatory once liability is found, whereas punitive damages are never awarded as of right. Smith, 461 U.S. at 52. Once the jury has determined that the defendant is factually liable, its decision to award punitive damages properly depends on its discretionary moral judgment that the defendant's culpable conduct merits the particular punitive award imposed. See Id. at 648 (discussing the standard set forth in Smith 461 U.S. at 52). The decision to make this judgment and impose punitive sanctions is "within the exclusive province of the jury." Kennedy 901 F.2d at 707. In the case at bar, the same substantial evidence that supports the jury's finding that Detective Sirk violated Mr. Bradford's Fourth Amendment rights also supports the award of punitive damages.[5]
 
 F. Attorney's fees:
 
 43
 Finally, Detective Sirk claims that the amount of attorney's fee awarded by the district court, under 42 U.S.C. Sec. 1988, was excessive. We review the award of attorney's fees for abuse of discretion. Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). Detective Sirk presents a laundry list of hours he claims were unreasonably expended, of which only one is worthy of discussion.
 
 
 44
 He asserts that the award should be reduced because Mr. Bradford dismissed his case against two of the defendants on the eve of trial. He cites Corder v. Gates, 947 F.2d 374, 379 (9th Cir.1991), for the proposition that it was improper not to make such a reduction. But in Corder we explicitly made clear that district courts have "considerable discretion" whether to reduce an award where, as here, the plaintiff brings suit against a number of defendants but only prevails against a few. Id. at 380. We find no abuse of discretion in this or any of the other decisions that went into the attorney's fee award.
 
 
 45
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 As this was happening, the car in which Bradford had arrived started up and drove the wrong way down a one-way street. One of the officers shot and killed the driver of the car. These events are not at issue in this case
 
 
 [2]
 There is an exception if the party has no opportunity to object when the decision is made. Detective Sirk does not suggest that he had no opportunity to object to the court's ruling
 
 
 [3]
 Hard v. Burlington Northern Railroad, 812 F.2d 482, 485-6 (9th Cir.1987) ("Hard I"), cited by Detective Sirk, is not on point. There we held that juror discussion of past experiences that were "directly related to the litigation" could constitute extraneous prejudicial information which would be admissible to prove juror misconduct. Hard II, at 1162. We therefore remanded to the district court to hold an evidentiary hearing to determine if the juror discussed his past experience with the defendant's treatment of job injuries with the jury
 
 
 [4]
 The district court did not instruct the jury to disregard Mr. Bradford's testimony about the nature and extent of his injuries, and Detective Sirk has not suggested that this decision was not proper
 
 
 [5]
 Detective Sirk cites two of circuit cases in support of his theory that we should review the punitive damages award less deferentially. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 581 (1st Cir.1989), merely states that punitive damages require more culpable conduct than compensatory damages. This is consistent with our analysis. On the other hand, Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir.1989) seems to require an entirely separate factual inquiry by the jury, which must satisfy a separate sufficiency of the evidence test. See Id. (reversing an award of punitive damages while upholding section 1983 liability). Such a requirement is inconsistent with our cases, cited in the text, and with Smith v. Wade. See Smith, 461 U.S. at 51-52 (approving punitive damages jury instruction that applied substantially the same standard as applied to compensatory damages)